STATE ex rel. GREAT LAKES PIPE LINE COMPANY, a corporation, Respondent,

v.

Martin C. HENDRICKSON, As Village Clerk of the Village of Lone Jack and a Member of the Board of Trustees Thereof, Richard V. Brown, Rick Carrico, James S. (Steve) Parker and Don Muncy, as Members of the Board of Trustees of the Village of Lone Jack, Appellants.

No. 51266.

Supreme Court of Missouri,

Division No. 1.

Aug. 20, 1965.

Milton B. Edmonson, Kansas City, for appellants.

Swanson Midgley Jones Blackmar & Eager, Ralph M. Jones, Donald H. Loudon and William C. Nulton, Kansas City, Leon B. Seck and Robert S. Burns, Kansas City, of counsel, for respondent.

WESTHUES, Special Commissioner.

The State of Missouri, at the relation of Great Lakes Pipe Line Company, a corporation, filed a proceeding in mandamus in the Circuit Court of Jackson County, Missouri, seeking a writ to compel the Village Clerk of Lone Jack to issue a permit authorizing construction of a pumping station within the limits of the Village. The trial court issued the writ prayed for. A motion for rehearing was overruled and the Clerk and the Board of Trustees of the Village appealed. The appeal was granted to the Kansas City Court of Appeals. That court transferred the cause to this Court on the theory that more than $15,000 was involved. The record justifies the order of transfer.

Relator Great Lakes Pipe Line Company, the operator of a pipe line transporting petroleum products, supplies heating oils and vehicular fuels for public use.

The respondents named in relator's petition are Martin C. Hendrickson, the Clerk of the Village of Lone Jack, who is also a member of the Board of Trustees, and the other members of the Board of Trustees, Richard V. Brown, Rick Carrico, James S. Parker, and Don Muncy. The 1960 U. S. census states that the population of Lone Jack is 220.

The trial court made a finding of facts which we find to be amply supported by the evidence and which we have seen fit to quote in full, omitting only the description of the land upon which Great Lakes Pipe Line Company seeks to locate the pumping station. It reads:

"This action having duly come on for trial on September 1, 1964, and the return of the respondents to the alternative writ of mandamus heretofore issued thereupon being submitted to the Court, and evidence having been presented on said day on behalf of the relator, the respondents presenting no evidence, and the Court having taken said proceeding under advisement.

"Now on this 8th day of September, 1964, the Court hereby finds the issues in favor of the relator and that respondents have not shown any just cause why a peremptory writ of mandamus should not issue as prayed by the relator.

"The Court does further find as follows:

"1. That Relator is a public utility with statutory power of eminent domain in Missouri to acquire right of way for pipelines, but not for the erection of pumping stations.

"2. That Relator acquired the one acre tract in question located within the limits of the incorporated Village of Lone Jack at the southwest perimeter thereof for the installation of a pumping station on its new line from Olathe, Kansas, to Columbia, Missouri, after having been advised by the Village attorney that it had no zoning regulations and none were presently contemplated.

"3. That Relator entered a contract for the construction of the station and the contractor in June of 1964 commenced work on the site prior to July 21, 1964, by grading the same, erecting a small building for use during construction, moving equipment thereon, excavating and pouring concrete

foundation for the engine and pump. In addition to the $3,500 paid for the land, it had spent or committed itself to July 7, 1964 a total of $64,752.76.

"4. On July 7, 1964, respondents enacted a zoning ordinance placing the site in a district classified as 'R–1' Single-Family, which permitted farm buildings and agricultural use.

"5. Relator did not learn of the enactment until July 21, 1964, and filed on July 23, 1964, its application for certificate of occupancy and compliance and for building permit with respondent Martin C. Hendrickson, Village Clerk, pursuant to Article XIV of the zoning ordinance.

"6. Relator had established a non-conforming use of the tract for the purpose of a pumping station prior to the enactment of the ordinance, had a vested right thereto, and Relator's application met all the requirements of the ordinance and was accompanied by the proper fee.

"7. Respondent Hendrickson was requested to issue the certificate and permit but declined to do so.

"8. The respondents at a special meeting on July 25, 1964 established a Board of Zoning Adjustment and referred the application to it for investigation if for the betterment of the Village.

"9. That Board made a unanimous recommendation to the respondents in writing on July 31, 1964 that the application be granted with a condition as to the noise level.

"10. At a regular meeting of the respondents on August 11, 1964 they unanimously rejected Relator's application.

"11. The station site is unimproved pasture land on a county road with the nearest residence over a quarter of a mile distant, and the use for a pumping station is reasonable.

"12. Respondents' action is unreasonable, arbitrary and capricious, is without authority under the ordinance, and is unconstitutional and void as depriving Relator of the use of its property without due process of law.

"13. It was the duty of respondent Hendrickson to issue the certificate and permit.

"WHEREUPON, it is by the Court considered and adjudged that a writ of peremptory mandamus be and is hereby issued to the respondent Martin C. Hendrickson, Village Clerk of the Village of Lone Jack, directing him immediately upon receipt of the writ to issue Relator a certificate of occupancy and compliance and for a building permit to allow the construction of and use by Relator of a petroleum products pipeline pump station on the following described property: * * * in accordance with its application therefor, and that Relator have and recover its costs from respondents and have execution therefor."

The respondents named in the petition are appellants in this Court. They will hereinafter be referred to as the "Village." The relator in the court below is the respondent in this Court. It will hereinafter be referred to as "Great Lakes."

■ The first contention briefed by appellants is that the trial court erred in granting a writ of mandamus because Great Lakes had not exhausted its legal remedies by way of an appeal from the refusal to issue a permit. It is there said that mandamus is not the proper remedy to review a discretionary power. The answer to this question depends upon whether the duty of the Village Clerk to grant Great Lakes' application and to issue a permit was discretionary or ministerial. 55 C.J.S. Mandamus § 63, p. 100. It is our opinion that the duty was ministerial in the circumstances of this case.

The evidence disclosed that Great Lakes applied to the Jackson County authorities for a permit before it began building a pumping station. Great Lakes was informed that the county authorities had no jurisdiction because Lone Jack had been incorporated. This incorporation had oc-

curred in December, 1963. Great Lakes then inquired if a zoning ordinance had been enacted. An attorney acting for the Village informed Great Lakes that no such ordinance had been enacted and none was contemplated at that time.

Great Lakes then began constructing a pumping station. While this was in progress, it was learned that an ordinance had been enacted. Great Lakes then applied to the Clerk of the Village for a permit on the theory that its pumping station came within the provisions of the Village ordinance which provides in part, under Article II, as follows:

"32. *Non-Conforming Use:* Any building or land lawfully occupied by a use at the time of passage of this Ordinance or amendment thereto, with the use regulations of the district in which it is situated."

Article X, Section 2, of the Ordinance, provides in part as follows: "The lawful use of a building existing at the time of the effective date of this Ordinance may be continued although such use does not conform to the provisions hereof. * * *"

Article XIV, Section 5, provides that "Building permits shall be obtained from the Village Clerk and displayed in the area where construction is to be made."

The only excuse given by the Clerk for not issuing the permit was that the attorney for the Village had asked him not to do so. The Village at no time ever informed Great Lakes of any legal grounds for refusing to issue a permit.

■ The evidence of Great Lakes at the trial was that the nearest residence to the site of the station was one fourth of a mile; that a person standing at the site could not see any residence in any direction; that the sound of the motors could not be heard beyond 300 feet. The first street intersection was a quarter of a mile in one direction and two miles in the other direction. At the time the ordinance was passed, Great Lakes had spent and obligated itself in an amount in excess of $64,000. None of this evidence was refuted. The refusal to grant a permit, in our opinion, was arbitrary and without justification or excuse. The trial court so found and the evidence supports that finding. As we noted supra, it was the duty of the Village Clerk to issue the permit and this duty was ministerial and not discretionary. See State ex rel. Folkers v. Welsch, 235 Mo.App. 15, 124 S.W.2d 636, l. c. 639 (1, 2); State ex rel. Gerig v. Graves, Mo.App., 171 S.W.2d 778; 55 C.J.S. Mandamus § 156, p. 295.

In its brief, the Village stated that the Court should not have issued the writ because there was no substantial evidence of a pre-existing non-conforming use, the only evidence being of vague and indefinite expenditures. To this we cannot agree. The unrefuted evidence was that Great Lakes had acquired a site and completed a portion of the structure and had obligated itself to the extent of over $64,000. All this was before the zoning ordinance was passed. We rule that the evidence supported the trial court's finding that Great Lakes had established a non-conforming use prior to the enactment of the zoning ordinance.

In 101 C.J.S. Zoning § 186, p. 943, it is stated, "A structure in the course of construction at the time of the enactment of the ordinance is protected as a nonconforming use, but mere preliminary work which is not of a substantial nature does not constitute a nonconforming use." That rule is supported by numerous cases. See Amereihn v. Kotras, 194 Md. 591, 71 A.2d 865, l. c. 868, 869(1–3) (4); Meuser v. Smith, Ohio App., 141 N.E.2d 209, l. c. 211(1); County of Du Page v. Elmhurst-Chicago Stone Co., 18 Ill.2d 479, 165 N.E. 2d 310; Board of County Commissioners of County of Sarpy v. Petsch, 172 Neb. 263, 109 N.W.2d 388 l. c. 390, 391(1) (2) (3, 4); Daoud v. City of Miami Beach, 150 Fla. 395, 7 So.2d 585.

We rule that the trial court had jurisdiction and that mandamus was proper. The evidence amply supports the findings made

 

by the trial court and the judgment of the circuit court awarding the peremptory writ of mandamus is hereby affirmed.

PER CURIAM:

The foregoing opinion by WESTHUES, Special Commissioner, is hereby adopted as the opinion of the Court.

All of the Judges concur.