STATE of Missouri ex rel. J. S. ALBERICI, INC., Petitioners-Respondents,

v.

CITY OF FENTON et al., Respondents-Appellants.

No. 38666.

Missouri Court of Appeals, Eastern District.

Jan. 16, 1979.

---

David Evans, William R. Dorsey, Clayton, for respondents-appellants.

Wallach, Miller & McAvoy, Jerome Wallach, Fenton, for petitioners-respondents.

KELLY, Judge.

The appellants appeal from a judgment of the circuit court of St. Louis County ordering Harry Wilson, Director of Public Works of the City of Fenton, to issue a building permit to the respondent, J. S. Alberici, Inc. or the prospective purchaser of the property in question, Union Colliery Company, for the construction of a trash transfer station on a tract of land of approximately thirty-five acres located within the city limits. For reasons hereinafter stated, the judgment of the trial court is reversed and judgment entered in this court pursuant to the authority of Rule 84.14.

The appellants, the City of Fenton, Alvin Strode, Mayor, Florence Hyer, City Clerk,

Raymond Nothe, Chairman of the Planning and Zoning Commission, and Harold Wilson, Director of Public Works, were named as respondents in the mandamus action in a petition for writ of mandamus filed on the 6th day of July, 1976, and as party-defendants in an alternative petition for declaratory judgment filed on the 25th day of August, 1976, following the issuance of an alternative writ of mandamus on the 6th day of July, 1976. This litigation grew out of the refusal of the appellants to grant a permit for the construction of a trash transfer station in an area zoned "J" Light Industrial on property owned by the respondent, J. S. Alberici, Inc., on the grounds that the proposed construction would be in violation of Ordinance No. 51, Sec. 19, par. 22 of the City of Fenton prohibiting the use of a building or premises for ". . . garbage, offal or dead animals, reduction or dumping."

The appellants contended in the trial court, and so contend here on appeal, that the trial court lacked jurisdiction to proceed with the petition for writ of mandamus and the alternative petition for declaratory judgment for the reason the petitioners in the trial court had not exhausted their administrative remedies pursuant to Chapter 89 RSMo 1969 and Ordinance No. 87 of the City of Fenton. We agree.

The initial question to be resolved is whether the respondent here, J. S. Alberici, Inc., had the requisite standing to bring this action and was, in fact, a real party in interest. This question arises because the evidence is that the respondent entered into an agreement with the Union Colliery Company (hereinafter, the Colliery Company) a wholly owned subsidiary of the Union Electric Company, in September of 1975, whereby the Colliery Company was granted an option to purchase the tract of land in issue from the respondent for the purpose of constructing thereon the trash transfer station. The purchase, however, was contingent upon the Colliery Company obtaining the necessary permits and licenses for construction of the station and occupancy of the land for those purposes. According to the original contract this option to purchase

had to be exercised by October 20, 1975, but several extensions of the time for performance were granted to the point where the final extension was until 30 days after finalization of the application for the issuance of a building permit.

In January of 1976 the Colliery submitted plans for the station to Mr. Wilson as the Director of Public Works for the City of Fenton, and he informed either the respondent or the Colliery orally that there was a zoning ordinance problem with the plans. This opinion was based upon a letter of the City Attorney expressing his opinion to the Mayor that the proposed use of the property by the Colliery Company would be in violation of Section 19(22) of the Fenton City Ordinance No. 51.

Rather than following the provisions for appeal to the Board of Adjustment contained in Section 3 of Ordinance No. 87, on February 20, 1976, J. S. Alberici, Inc., and the Colliery Company filed a joint petition with the Planning and Zoning Commission of the City requesting a change of zoning to permit the building of the trash transfer station. The Planning and Zoning Commission held public hearings on the petition and recommended that the petition be denied. The Board of Aldermen of the City met on May 17, 1976, to consider the recommendation of the Planning and Zoning Commission, and upon motion duly passed, affirmed the action of the Planning and Zoning Commission denying the petition of J. S. Alberici, Inc. and the Colliery Company.

In June of 1976, the Colliery Company submitted additional plans for the construction of the station to Mr. Wilson, and on or about June 11, 1976, J. S. Alberici, Inc. and the Colliery Company filed a second petition to amend the applicable Ordinance, but at their request further action on this petition was delayed.

On June 28, 1976, a letter signed by J. S. Alberici, Inc. and the Colliery Company was sent to Mr. Wilson demanding that he issue a building permit for the construction of the station. Mr. Wilson responded to this letter by giving the representatives of J. S.

Alberici, Inc. and the Colliery Company a copy of some departmental correspondence dated June 28, 1975, from himself to the Mayor advising the Mayor that the project had been disapproved for zoning by his office because the property in question was in violation of Ordinance 51, Sec. 19, par. 22.

Thereafter, on July 6, 1976, the respondent filed its Petition for Writ of Mandamus and thereafter, on August 25, 1976, its Alternative Petition for a Declaratory Judgment. The Colliery Company was not a party to either of these petitions.

We conclude that the respondent is a proper party to this action. Bare legal title constitutes sufficient interest to bring an action at law. *Holt v. Myers*, 494 S.W.2d 430, 437[5] (Mo.App.1973), and the respondent is the owner of the property here in question.

The crucial question remaining for decision is whether the respondent's failure to appeal the denial of the building permit for the proposed trash transfer station to the Board of Adjustment of the City pursuant to § 89.100 RSMo.1969 and Ordinance No. 87 of the City requires reversal of the trial court's judgment.[1]

The exhaustion of administrative remedies is a jurisdictional requirement for a declaratory judgment action. *Westside Enterprises, Inc. v. City of Dexter*, 559 S.W.2d 638, 641[1] (Mo.App.1977); *Ackerman v. City of Creve Coeur*, 553 S.W.2d 490, 492 (Mo.App.1977). In each of these cases, zoning matters in which the parties seeking declaratory relief were the subject of the action, the question whether the parties' failure to follow the review procedure established under § 89.100 RSMo.1969, was a prerequisite to a declaration of their rights was before the appellate tribunal. In each instance it was held that § 89.100 RSMo. 1969 provides a specific method of review which is exclusive and until that method has been exhausted the circuit court lacks

jurisdiction to entertain a declaratory judgment action or to grant equitable relief in a case involving the efforts of the property owner to obtain relief from the provisions of a zoning ordinance. The only permissible exception to the exhaustion requirement in zoning matters appears to be where constitutional questions are raised. *Bormann v. City of Richmond Heights*, 213 S.W.2d 249, 253 (Mo.App.1948); *Westside Enterprises v. City of Dexter*, supra, l.c. 640. Respondent has not raised a constitutional question here.

Respondent contends that the holding in *Ackerman*, supra, is inapposite. This argument is without merit, and the cases respondent relies upon in support of this contention—*Rosedale-Skinker Improvement Association v. Board of Adjustment of City of St. Louis*, 425 S.W.2d 929 (Mo. banc 1968) and *Phillips v. Board of Adjustment of City of Bellefontaine Neighbors*, 308 S.W.2d 765 (Mo.App.1958)—are distinguishable on the issues involved therein. We are not here dealing with a variance, nor a situation where it is contended that the Board of Aldermen passed an ordinance which it had no authority to pass, as was the issue in those cases.

We conclude therefore that there was available to the respondent an adequate remedy by way of administrative appeal which it chose to ignore.

Respondent not only failed to exhaust its administrative remedies, it also failed to pursue the method of judicial review provided in Chapter 89 and Ordinance No. 87 of the City of Fenton by petition for certiorari. It chose, instead, to proceed by way of § 536.100 RSMo.1969. This has been held improper in *American Hog Company v. County of Clinton*, 495 S.W.2d 123, 126[4, 5, 6] (Mo.App.1973), where the statutory procedure for review of county zoning matters was set out in § 64.660 RSMo.1969 and the court ruled that declaratory judgments

---

1. This appeal is limited to the refusal of the Director of Public Works to grant the building permit. The record indicates that in addition to seeking the permit, the Colliery Company also requested an amendment to the City Ordi-

nance, but this too was refused. However, this action of refusing the amendment to the Ordinance was not under attack in the trial court and therefore we do not consider this question.

which are authorized under both § 536.100 RSMo.1969 (The Administrative Procedure Act) and § 527.020 RSMo.1969 (The General Declaratory Judgment Act) could not be brought where a different statutory method of review was provided. This holding was applied to proceedings under Ch. 89 RSMo. 1969 in *Ackerman v. City of Creve Coeur,* supra, l.c. 492, and is controlling under the facts before us.

Respondent argues, however, that mandamus is an appropriate remedy in the context of this case, and it should not be required to exhaust its available administrative remedies prior to the issuance of the writ. As we understand respondent's argument the issuance of this building permit upon application was mandatory because of the sentence in Section 2 of Ordinance No. 315(a), which reads:

"He (the Building Commissioner) shall receive applications and issue permits for the erection and alterations of buildings and structures and examine the premises for which such permits have been issued and enforce compliance with the Ordinances of the City of Fenton."

The Building Commissioner's enforcement powers, hereinafter set out, it argues, do not come into play until after a permit has been issued; this, because a building does not violate use restrictions. It is only the use of a building which can constitute a violation of the ordinances. Therefore, respondent argues, the enforcement of the zoning regulations comes into being only after the building permit has been issued and the premises have been inspected. Because the Building Commissioner refused to issue the building permit, respondent argues the Board of Adjustment had no jurisdiction to entertain an appeal from the ruling of the Building Commissioner.

Section 2 of Ordinance No. 315(a) clothes the Director of Public Works with broad authority. Section 2 of Ordinance No. 315(a) charges the Director of Public Works in his capacity as Building Commissioner to "enforce all ordinances which refer or relate in any manner to construction of any type or kind" and requires that he "act on any question relative to the mode or manner of construction . . . and the location, use, occupancy and maintenance of all buildings and structures." For this reason we find respondent's argument untenable, and we are of the opinion that the Building Commissioner is charged with making a determination whether any building for which a permit is sought violates the City's zoning ordinance prior to the issuance of a permit. In some applications, as is the case here, that determination can be made from the plans filed with the application. If he errs in refusing to issue the necessary building permit, his decision is appealable to the Board of Adjustment. Respondent did not pursue its administrative remedies under the applicable Ordinances or Statutes.

Respondent's proposed building was undeniably for the construction of a trash transfer station; the Building Commissioner concluded that the proposed use was violative of Section 19(22) of Ordinance No. 51 and denied the application for that reason. This we believe he had the right to do, subject to administrative review.

Respondent seeks to avoid the necessity of the exhaustion of its administrative remedies on the authority of *State ex rel. Great Lakes Pipeline Company v. Hendrickson,* 393 S.W.2d 481 (Mo.1965). In *Hendrickson* the court held that mandamus was proper where a village clerk refused to issue a building permit to a pipeline operator which had established a nonconforming use prior to the enactment of a zoning ordinance placing the site in a district classified as "R–1 Single Family," even though the pipeline company had not exhausted its legal remedies by way of an appeal from the refusal to issue the permit. The court there concluded that the duty of the clerk, under the facts of that case, to grant the pipeline's application and to issue a permit was purely ministerial, and mandamus, therefore, was proper.

The decisive facts in *Hendrickson* were that the pipeline company had applied to the Jackson County authorities for a permit before it began building the pumping station, and was informed that the county

authorities had no jurisdiction because Lone Jack had been incorporated. The relator then inquired if a zoning ordinance had been enacted and an attorney acting for the Village informed relator that no ordinance had been enacted and none was contemplated at that time. Armed with this information, the relator began constructing the pumping station and while so engaged learned that an ordinance had, in fact, been enacted by the Village of Lone Jack. At the time the ordinance was passed the relator had already expended or obligated itself to expend, $64,000 in the undertaking and when it learned of the ordinance, it applied to the Village Clerk for a permit on the theory that the pumping station was a non-conforming use. The Village Clerk denied the permit on the advice of the Village Attorney. It was because the pumping station was in the process of construction when the ordinance was enacted and therefore constituted a non-conforming use that made the issuance of the permit purely ministerial and the granting of the writ appropriate in *Hendrickson.* However, those are not the facts here.

Mandamus, being an extraordinary legal remedy, should not issue unless the party seeking the writ shows a " 'clear, unequivocal, specific right to have performed the thing demanded and that the defendant or respondent has a corresponding duty to perform the action sought.' " *State ex rel. Patterson v. Tucker,* 519 S.W.2d 22, 24[5] (Mo.App.1975). The respondent did not satisfy this standard, and we hold therefore that the writ was inadvisedly issued, because there was available to the respondent an adequate and available remedy by way of administrative review which was not exhausted.[2]

While we might reverse and remand this cause to the trial court for further proceedings, we have chosen to exercise the power conferred upon this court by Rule 84.14 and enter the judgment which should have been entered in the trial court and thereby bring this litigation to an end. We therefore reverse the judgment of the trial court on both the declaratory judgment action and the petition for writ of mandamus and enter a judgment dismissing the petition of J. S. Alberici for declaratory judgment and quashing the writ of mandamus heretofore issued, at respondent's cost.

WEIER, C. J., and GUNN, P. J., concur.

---

**2.** We do not reach appellant's Point II, relative to the trial court's construction of Ordinance No. 51, Section 19, Paragraph 2(22) because of our holding with respect to Point I of appellant's Points Relied On which makes it unnecessary that we rule on that Point.