INDEPENDENT STAVE CO., INC.,
Plaintiff-Appellant,

v.

MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION,
Defendant-Respondent.

No. 14164.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 27, 1985.

David E. Wilhite, Donnelly, Baldwin & Wilhite, Lebanon, for plaintiff-appellant.

Bruce A. Ring, Chief Counsel, Dennis J. Redel, Asst. Counsel, Jefferson City, for defendant-respondent.

PREWITT, Chief Judge.

Respondent ordered appellant to remove three outdoor advertising signs. The orders were based on § 226.500 through § 226.600, RSMo 1969 and RSMo 1978, which regulate outdoor advertising adjacent to the interstate and primary highway systems. The Laclede County Circuit Court affirmed the orders.

Each sign is located in an unzoned, apparently rural area. Appellant has a separate "point relied on" and advances a different contention with respect to each sign. In appellant's first point it states that the order for removal of a sign is improper because the sign was located within 1000 feet of commercial activity as the sign is "located in the area used for agricultural purposes". The sign is located in "grass land". The grass is cut, baled,

and used by the owner "to feed his own cattle."

Appellant relies on § 226.540, RSMo 1969, in effect at the time the sign was erected, but since amended, see RSMo 1978. It provided in part:

[O]utdoor advertising shall be permitted in areas zoned industrial, commercial or the like and in unzoned commercial and industrial areas as hereafter defined, subject to the following regulations which are consistent with customary use in this state:

\*   \*   \*   \*   \*   \*

(4) *"Commercial and industrial areas"* consistent with zoning principles and standards applicable in this state, include: all land so zoned; all unzoned land within one thousand feet of any commercial or industrial activity other than outdoor advertising; all land lying within one thousand feet of any two such unzoned areas; and all other unzoned lands appropriate for outdoor advertising which are determined to be unzoned commercial or industrial areas by any county court of this state.

Appellant argues that " 'agricultural activities' constituted a 'commercial activity' as that term is used in the subject law and, therefore, the signboard in question was located within 1,000 feet of a commercial activity."

Appellant acknowledges that there are both broad and narrow definitions of "commercial". It claims that because the "Billboard Act" is "penal in nature", it must be strictly construed. Appellant states that this interpretation is "supported" by the later express exclusion of "[a]gricultural, forestry, ranching, grazing, farming, and related activities" from "commercial or industrial activities". See § 226.540(5)(b), RSMo 1978. Appellant asserts that since the legislature is presumed to have intended to accomplish something by amendment, it is logical to assume that the legislature felt that commercial activity previously included agricultural pursuits.

In determining the meaning of a statute, words are given their plain and ordinary meaning. *Thomas v. Labor and Industrial Relations Commission,* 678 S.W.2d 894, 896 (Mo.App.1984). "Commercial" in its broad sense includes all business, while in a narrow sense it includes only those enterprises engaged in buying and selling goods and services. *Reiser v. Meyer,* 323 S.W.2d 514, 521 (Mo.App.1959). When "commercial" is limited to the purchase and sale or exchange of goods and or commodities, it is used in its narrow sense. Id.

Certain agricultural activities have been held to be commercial activities or activities in commerce. See *Gemini Shipping v. Foreign Trade Organization,* 647 F.2d 317, 319 (2d Cir.1981); *Murry v. Noblesville Milling Co.,* 131 F.2d 470, 475 (7th Cir.1942), *cert. denied* 318 U.S. 775, 63 S.Ct. 832, 87 L.Ed. 1145 (1943). See also *Bowles v. Co-operative G.L.F. Farm Products,* 53 F.Supp. 413, 415 (W.D.N.Y.1943) (Railroad purchasing eggs for resale in its dining car is a "commercial" user); *Yoshida v. Security Ins. Co.,* 145 Or. 325, 26 P.2d 1082, 1087–1088 (1933) ("hogfeeding plant", not agricultural, but commercial).

The question here is not whether all agricultural or some agriculturally related pursuits might be commercial activity under § 226.540, RSMo 1969, but whether farming would be included. Appellant cites *Mechanical Farm Equipment Distributors v. Porter,* 156 F.2d 296, 298 (9th Cir.1946), *cert. denied* 329 U.S. 771, 67 S.Ct. 188, 91 L.Ed. 663 (1946), which held that "commercial" under a federal statute included farming activities, as commercial in its broad sense encompasses all business activities. For the reasons hereafter stated we reach a different result under § 226.540, RSMo 1969.

Sections 226.500 to 226.600, RSMo 1969, have been described as "remedial" rather than of a "penal" nature. See *State ex rel. State Highway Commission v. Heil,* 597 S.W.2d 257, 259 (Mo.App.1980). Thus, they are not required to be strictly construed against the state as is a penal statute. See *State ex rel. State Highway Commission*

*v. Carlton,* 453 S.W.2d 642, 651 (Mo.App. 1970). Therefore, a broad definition of "commercial" is not required.

By specifically excluding farming in § 226.540(5)(b), RSMo 1978, the legislature may not have intended to change the meanings of "Commercial and Industrial activity" but may have sought to remove any question as to whether farming was included. An amendment to a statute may be to clarify rather than to change it. *Osage Outdoor Advertising v. State Highway Commission,* 699 S.W.2d 791, 793 (Mo.App. 1985).

*State ex rel. Kansas City Power & Light Co. v. Smith,* 342 Mo. 75, 111 S.W.2d 513, 515 (banc 1938), says that in its broad sense "commercial" includes everything pertaining to commerce including industrial pursuits. That case states, "If the word 'commercial' includes 'industrial,' then why did the Legislature use the word 'industrial' also?" The opinion concluded that by using both words the legislature intended to use commercial in its restricted sense. That reasoning could be applicable here but as *Smith* might be of questionable validity in view of *King v. Laclede Gas Co.,* 648 S.W.2d 113, 115 (Mo. banc 1983), we reach our decision on a different basis.

If "commercial" is broad enough to include farming then it would appear that signs can be installed on or within 1,000 feet of land used for nearly any purpose except residential where the owner resides there. Only land not being used for a profit would be excluded from "commercial and industrial activity". That would make the statutory regulations in question here almost meaningless and would not accom-

plish the purposes of § 226.500, RSMo 1969. This section is set out below.[1]

It appears that the legislature intended by the statutory sections to limit the signs in unzoned areas to locations near structures where industrial or sales activities were occurring. Farming does not require that buildings be close to all the areas where it occurs. We also believe that as normally used in its strictest sense, "commercial" would not include farming, at least as ordinarily practiced in this area. We hold that "commercial" was not intended to include farming in § 226.540, RSMo 1969. Compare *Osage Outdoor Advertising v. State Highway Commission,* supra, 699 S.W.2d at 793 (Railroad track not commercial or industrial activity under § 226.-540, RSMo 1969). Point one is denied.

■ Appellant contends in its second point that an order of respondent was erroneous because at the time the sign in question was constructed it complied with § 226.540, RSMo 1969, as it was located within 1,000 feet of appellant's retail store which was then under construction. The sign was on the opposite side of an interstate highway from the store. The sign was erected "on or about" March 14, 1972, and appellant presented evidence that construction on the store started before March 30, 1972. The store opened for business in August of 1972.

Section 226.540, RSMo 1969, was amended effective March 30, 1972. See Laws 1971–1972, pp. 856–863. Certain provisions that were changed and are applicable to this point are set out below.[2] Appellant

1. 226.500. *Purpose of law.*— The general assembly finds and declares that outdoor advertising is a legitimate commercial use of private property adjacent to the interstate and primary highway systems and that it is necessary to regulate and control same to promote highway safety, to promote convenience and enjoyment of highway travel, and to preserve the natural scenic beauty of highways and adjacent areas. The general assembly further declares it to be the policy of this state that the erection and maintenance of outdoor advertising in areas adjacent to the interstate and primary highway systems be regulated in accordance with sec-

tions 226.500 to 226.600 and rules and regulations promulgated by the state highway commission pursuant thereto.

2. § 226.540. *Signs permitted—lighting restrictions—size, location—zones—specifications.* —Notwithstanding any other provisions of sections 226.500 to 226.600, outdoor advertising shall be permitted within six hundred and sixty feet of the nearest edge of the right-of-way of any interstate or primary highway in areas zoned industrial, commercial or the like and in unzoned commercial and industrial areas as hereafter defined, subject to the following regu-

acknowledges that if the sign had been erected after the changes in the statute it would not have been proper because the amended section requires the sign to be on the same side of an interstate highway as the commercial activity. Appellant contends that as the sign was legal before the change in § 226.540, the sign was validly erected.

Appellant relies only on the change in § 226.540, and on *State ex rel. Great Lakes Pipe Line Co. v. Hendrickson,* 393 S.W.2d 481 (Mo.1965). In that case the court held that ongoing construction of a pumping station at the time a zoning ordinance was enacted created a preexisting nonconforming use. The court stated that a structure in the course of construction when a zoning ordinance is enacted is protected as a nonconforming use. 393 S.W.2d at 484. Preliminary work which is not of a substantial nature does not constitute a nonconforming use. Id.

When a structure is being built, substantial construction or substantial expenses directly relating to the construction must have occurred before the effective date of a zoning ordinance for a nonconforming use to exist. 82 Am.Jur.2d Zoning and Planning § 186, p. 700 (1976); Annot. 89 A.L.R.3d 1051, 1058 (1979).

Even if *Hendrickson* could be applicable to the erection of a billboard near a store under construction, a question we do not decide, that case is not applicable here. There is no indication in this record that any substantial work was performed on the store or substantial expenses incurred be-

cause of it by March 30, 1972. The only evidence on the status of the store building before § 226.540 was changed was that the construction contract for the store was entered into and that "[c]onstruction of that facility had begun before March 30, 1972." What construction was completed by March 30, 1972 or its cost was not shown.

The burden of proving a lawful continuation of a nonconforming use is on the proponent. *State ex rel. National Advertising Company v. State Highway Commission,* 624 S.W.2d 453, 461 (Mo.App.1981). Denial of a nonconforming use will be sustained where the evidence of its existence is doubtful. Id. Here, the legitimacy of the existing use was not established. Point two is denied.

■ Regarding the third sign, appellant's point states that the sign's "legal nonconforming status" was not "lost when the signboard was relocated at Respondent's request due to Respondent's condemnation of the land where the signboard was located ... because Respondent is estopped to assert that the legal conforming status was lost since its Chief Counsel represented that such status would be maintained if the sign was relocated voluntarily and Appellant relied and acted upon this representation to Appellant's detriment."

Appellant contends that it relied upon a letter written to a sign company on March 1, 1972, by respondent's then chief counsel, regarding a sign within respondent's "contemplated right-of-way". The letter stated that if the sign is moved "back on the same

---

lations which are consistent with customary use in this state:

\* \* \* \* \* \*

(4) As used herein, the words *"unzoned commercial and industrial land"* shall be defined as follows: That area not zoned by state or local law or ordinance and on which there is located one or more permanent structures used for a commercial business or industrial activity or on which a commercial or industrial activity is actually conducted whether or not a permanent structure is located thereon, together with the area along the highway extending outwardly six hundred feet from and beyond the edge of such activity. All measurements shall be from the outer edges of the regularly used improvements,

buildings, parking lots, landscaped, storage or processing areas of the commercial or industrial activity and along and parallel to the edge of the pavement of the highway. On nonfreeway primary highways, where there is an unzoned commercial or industrial area on one side of the road as herein described, the term *"unzoned commercial or industrial land"* shall also include those lands directly opposite on the other side of the highway to the extent of the same dimensions. Unzoned land shall not include:

(a) Land on the opposite side of an interstate or freeway primary highway from an unzoned commercial or industrial area as hereinabove defined;

\* \* \* \* \* \*

property ... we will treat the signs so moved and if permitted in the same manner as we would have at their original location". The record does not show, and appellant does not contend, that the sign company receiving the letter had any connection to appellant or to the sign here in question.

The land where appellant's sign was located was condemned. Appellant presented evidence that after the condemnation occurred the sign was moved less than 100 feet "perpendicular to where it was set." Appellant claims that it relied upon the letter "in moving the sign and did not initiate legal proceedings contesting the acquisition of the right of way and Appellant's sign in a condemnation proceeding."

Equitable estoppel is applied against a governmental body only in exceptional circumstances and with great caution. *Patterson v. State Board of Optometry*, 668 S.W.2d 240, 243 (Mo.App.1984). See also *St. Louis Country Club v. Administrative Hearing Commission*, 657 S.W.2d 614, 616 (Mo. banc 1983). Generally see Comment Note—Applicability of doctrine of estoppel against government and its governmental agencies, 1 A.L.R.2d 338 (1948). Whether estoppel could be applied here, we need not decide because an essential element is absent.

The elements of equitable estoppel are (1) an admission, statement or act inconsistent with a claim afterwards asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to that party resulting from allowing the first party to contradict or repudiate such admission, statement or act. *Van Kampen v. Kauffman*, 685 S.W.2d 619, 625 (Mo.App.1985). The first element is not present as the letter was not written to appellant, nor regarding the sign in question.

There is no indication in the record that the letter was given by respondent to appellant. Nor is there evidence that the letter was intended to be communicated to appellant, that by the letter respondent intended to influence the conduct of appel-lant regarding the sign in question, or that respondent thought that appellant would rely upon the letter.

A statement will not create estoppel if it was addressed to, and designed for, the information of another, and was not intended to influence the conduct of the party who claims the estoppel. 28 Am.Jur.2d Estoppel and Waiver § 41, p. 648 (1966); 31 C.J.S. Estoppel § 69, p. 416 (1964). Under the evidence presented, the letter did not supply the first element of equitable estoppel. Point three is denied.

The judgment is affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.