957 F.2d 732
 Amy L. MARTURELLO, individually and on behalf of all other
persons similarly situated, Plaintiff-Appellee,
v.
Norman G. ANGUS, in his capacity as Executive Director of
the Utah Department of Human Services; John P. Abbott, in
his capacity as Director of the Office of Recovery Services,
Defendants-Third-Party-Plaintiffs-Appellees,
v.
Louis W. SULLIVAN, M.D., Secretary of the United States
Department of Health and Human Services,
Third-Party-Defendant-Appellant.
 No. 90-4188.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 14, 1992.
 
 Jonathan R. Siegel, Atty., Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., (Stuart M. Gerson, Asst. Atty. Gen., Dee Benson, U.S. Atty., and Michael Jay Singer, Atty., with him on the briefs), for third-party-defendant-appellant.
 Michael E. Bulson, Utah Legal Services, Inc., Ogden, Utah, for plaintiff-appellee Amy L. Marturello.
 Before HOLLOWAY, McWILLIAMS and TACHA, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Appellant, the Secretary of Health and Human Services (HHS), appeals an order of the district court granting summary judgment in favor of the Plaintiff Amy Marturello and issuing a permanent injunction. On appeal, the Secretary of HHS contends that his policy, declaring a recipient who fails to file a monthly report of income received ineligible to receive benefits, is a reasonable interpretation of the Social Security Act, 42 U.S.C. §§ 601 et seq., and implementing federal regulations. We reverse.
 
 BACKGROUND
 
 2
 Congress established the Aid to Families with Dependent Children (AFDC) program as a cooperative federal-state effort that is designed to enable each state to furnish financial assistance to needy children and their families. 42 U.S.C. § 602. Pursuant to a state plan, local authorities administer the AFDC program. Each state plan must conform to the requirements of the AFDC statute and its implementing regulations. Id. The federal statute requires, among other things, that each recipient file a monthly report of income received. Id. § 602(a)(14).
 
 
 3
 Marturello, a Utah AFDC recipient, began receiving AFDC assistance in December of 1981. In March of 1987, while she was receiving AFDC assistance, Marturello began earning approximately fifty dollars per month delivering newspapers. Marturello failed to file monthly reports of this income. In November of 1987, when the state agency discovered Marturello's failure to report this income, it declared her ineligible to receive AFDC benefits for the months that she failed to file a report. The state agency subsequently informed Marturello that she would be required to pay back the benefits pursuant to the requirements of federal law.
 
 
 4
 After exhausting her administrative remedies, Marturello brought an action against the state agency in the United States District Court for the District of Utah. The state agency impleaded the Secretary of HHS as a third-party defendant. The district court granted summary judgment in favor of Marturello and issued an injunction enjoining the defendant from applying its sanction of ineligibility to AFDC recipients who fail to file monthly reports.
 
 DISCUSSION
 
 5
 To resolve this appeal, we must determine what penalty Congress intended to impose on AFDC recipients who fail to file a report as required by 42 U.S.C. § 602(a)(14). To determine whether the penalty imposed by the agency in this case comports with Congress' intent, we follow a two-step process. If the intent of Congress is clear from the plain language of the statute, then we must give effect to that intent and our inquiry ends. If, however, we find that the statute is silent or ambiguous, then we examine whether the Secretary's interpretation of the statute is reasonable. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984).[1]
 
 
 6
 Section 602(a)(14) provides that "the State agency will require each family to which it furnishes aid to families with dependent children ... to report, as a condition to the continued receipt of such aid, ... each month to the State agency on--(i) the income received." (Emphasis added.) The district court found that although § 602(a)(14) clearly requires a recipient to file a report of income received, the penalty provision of § 602(a)(8) makes it unclear what penalty should be imposed for a failure to file. Section 602(a)(8)(B)(i)(III) provides that the state agency shall not disregard any earned income if a person "failed without good cause to make a timely report (as prescribed by the state plan pursuant to paragraph (14)) to the State agency of earned income received in such month." (Emphasis added.) The district court found that because "a person who fails to file any report at all also could be regarded as having failed to file a timely report ... an ambiguity exists under the statute as to whether the penalty imposed by section 602(a)(8) applies to the situation where no report at all is filed."
 
 
 7
 After reviewing the plain language of the statute, we conclude that § 602(a)(14) unambiguously provides a specific penalty for the failure to file a report. Section 602(a)(14) contains one of several conditions of eligibility that a state is required to impose on all recipients of AFDC. The section states that a report including the amount of income received must be filed "as a condition to the continued receipt of such aid." This section unambiguously applies to an individual who fails to file any report whatsoever. Most importantly, the word "condition" is not ambiguous in the context of § 602(a)(14). The language of the subsection unequivocally provides that a recipient can only continue to receive benefits if a report is filed. Any other reading of the statute would ignore the word "condition" and render it a nullity. "It would seem virtually tautological that when a statute imposes conditions or qualifications on any right or benefit granted therein, such prerequisites must be satisfied before any enforceable statutory entitlement can be said to exist." Hill v. Ibarra, 954 F.2d 1516, 1522 (10th Cir.1992). Therefore, § 602(a)(14) clearly makes a recipient ineligible when the recipient fails to file a report including income earned.
 
 
 8
 We also conclude that § 602(a)(8) does not affect the unambiguous nature of § 602(a)(14). The two sections provide different penalties for two different situations. Section 602(a)(8), on the one hand, imposes a penalty on individuals who, without good cause, fail to file a timely report. On the other hand, § 602(a)(14) applies when no report is filed at all. Further, whereas the focus of § 602(a)(14) is a family's eligibility to receive aid, the focus of § 602(a)(8) is whether the state agency should disregard income earned by a recipient in determining the amount of benefits to be paid. The determination regarding the amount of benefits necessarily can be made only after an applicant or recipient is found to be eligible. Therefore, § 602(a)(8) is not applied until a recipient files a report within the contemplation of the statute and implementing regulations. No report was filed in this case for income received between March and November of 1987.
 
 
 9
 We therefore hold that the statute is unambiguous and that filing a report including the amount of income received is a condition to the receipt of benefits. Having determined that the statute is unambiguous, we must give effect to the clear intent of Congress. As articulated by the Eighth Circuit, "[t]echnical requirements are conditions of eligibility under the law, and if conditions are not met, a payment to an ineligible family must be recovered." Johnston v. Iowa Dep't of Human Servs., 932 F.2d 1247, 1249 (8th Cir.1991) (reviewing an ineligibility ruling based on the failure of a recipient family's primary wage earner to register for work with the state public employment office). Because Marturello failed to satisfy the condition of § 602(a)(14), she was ineligible to receive AFDC payments during the time period when she failed to file a report including income earned. The order of the district court is REVERSED.
 
 HOLLOWAY, Circuit Judge, dissenting:
 
 10
 I must respectfully dissent. I find nothing in the language of the Social Security Act or its legislative history which shows that Congress wanted AFDC assistance completely cut off for a failure to file a report on income that would otherwise be disregarded, or the harsh retroactive penalty depriving Ms. Marturello of all her AFDC assistance for seven months. I would affirm the district court because the Act is silent or ambiguous as to a remedial mechanism when inconsequential amounts of income are not reported and because the Secretary's interpretation of the statutory scheme is grossly unreasonable.
 
 I.
 
 11
 To place this case in perspective, I believe the following facts deserve our attention: Plaintiff Amy Marturello initiated this declaratory judgment action against two state AFDC officials, claiming that the state agency's implementation of a policy promulgated by the Secretary was contrary to the AFDC provision of the Social Security Act. Under this policy, expressed in FSA Regional Memorandum 87-1, the Secretary declared that AFDC recipients who fail to file monthly reports of any amounts of earned income are "ineligible for assistance beginning with the month that the monthly report normally would have been used to compute assistance[.]" App. at 218 (emphasis added). Utah DHS began implementing this policy in March of 1987.[1]
 
 
 12
 As implemented by the Utah DHS, a report is considered timely filed on or before the fifth day of the month due. Any report filed thereafter is considered "late." After fifteen days, the recipient is to be notified that benefits may be terminated. A recipient filing a late report may show "good cause" for being late, in which case the report is considered timely filed. The failure to show good cause for a late report results in a denial of all EID's for that month. See Utah DSS-APA, Vol. II, § 334.3 through § 334.9. Significantly here, after the Secretary's new policy was implemented, Utah DHS no longer accepted reports after the last working day of the month it was due, regardless of the reason for untimeliness.
 
 
 13
 In November 1987, a Utah DHS caseworker discovered that Ms. Marturello had earned almost $50 per month delivering newspapers from March through September of 1987. Without contacting Ms. Marturello or otherwise attempting to discover why no reports were filed, Utah DHS declared her ineligible to receive her $439/month AFDC benefits for May through November of 1987.[2] Because Utah DHS had already paid Ms. Marturello these monthly benefits, the agency sent her a letter demanding recoupment of the overpayment of $3,073--the total of all her benefits during this period.[3]
 
 
 14
 In the proceedings below, Amy Marturello filed an affidavit in support of her position on the cross motions for summary judgment, and it was not contradicted by any opposing affidavit. From the materials before him, the district judge found that Mrs. Marturello misunderstood the filing requirements and believed that income reports need not be filed unless the income was sufficient to affect her grant. See App. at 231. The court also found that Ms. Marturello did not learn of the Secretary's policy to declare nonreporting recipients totally ineligible for assistance until November 1987. See id. The court also ascertained that:
 
 
 15
 If Marturello had been untimely but nevertheless had reported her income from the paper delivery job ... her AFDC grant of $439 would have been unaffected except as to the earned income disregards. If the small amounts had been timely filed and reported, plaintiffs [sic] AFDC grant apparently would not have been affected at all.
 
 
 16
 Id. n. 9.
 
 II.
 
 17
 The majority opinion correctly identifies the two-step analysis required for the review of an agency's construction of a statute which it administers; however, I believe the opinion reads too much into § 602(a)(14)(A) when applying that analysis. The Supreme Court instructs that:First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 18
 Chevron U.S.A. v. NRDC, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (emphasis added).
 
 
 19
 I cannot find the required specificity in the language of subparagraph (14)(A) which demonstrates to me a clear intention that Congress sought to penalize nonfiling recipients who have earned only disregardable income with total forfeiture of their benefits and a retroactive penalty to recover them. Subparagraph (14)(A) provides that the state agency shall require recipients "to report, as a condition to the continued receipt of such aid ... the income received[.]" This provision says nothing at all about a penalty--here an extended retroactive one--and most reasonably is construed as giving the state agency the power to temporarily withhold benefits until a report is received. This interpretation affords both respect and enforcement to the reporting condition. Congress did not declare that those who fail to comply are categorically "ineligible" as it clearly did in other parts of this very statute. Cf. § 602(a)(18) (declaring that "no family shall be eligible" if their income exceeds a specified amount); Id. at (a)(19) (declaring that "every individual, as a condition of eligibility for aid ... shall register" for work programs).
 
 
 20
 Thus, we cannot presume that when Congress intentionally chose the phrase "continued receipt" that it meant "eligibility" in the categorical sense that the majority opinion insists. Rather, it is merely the Secretary who has declared that AFDC recipients who fail to file monthly reports of any amounts of earned income are "ineligible for assistance[.]" See FSA Regional Memorandum 87-1. It is this administrative fiat, and not the statute, which declares Ms. Marturello irreversibly "ineligible for assistance[.]"[4] Because Congress was silent as to a particular enforcement mechanism when reports were not filed, the Secretary acted by promulgating the policy at issue here.[5]
 
 
 21
 Having found that the statute does not address the question presented to this court of the proper remedy for nonfiling, I conclude that the district court correctly analyzed the Secretary's interpretation under the second step of the Chevron analysis, finding his interpretation to be unreasonable. In a succinct statement of his reasoning, with which I completely agree, the district judge stated:
 
 
 22
 The interpretation by the Secretary which retroactively causes recipients to lose total eligibility without notice, an opportunity to file late reports, or an opportunity to show good cause for failure to file constitutes an unreasonable result. In such situations, the Secretary's interpretation so severely restricts the amount to which an otherwise eligible recipient would be entitled that it is contrary to the purpose of the statute. As applied to the facts of this case, defendants' policy interpretation is particularly harsh and unreasonable. In this regard, plaintiff points out that if she had filed a late report, the most severe sanction that could have been imposed under any interpretation would have been loss of earned income disregards. This would have reduced plaintiff's monthly grant by the amount of earned income received, a total of less than $350 over the period in question, rather than being sanctioned for over $3,700 [sic] for failure to report a few dollars a month which if reported would not have affected her eligibility or the amount of her grant at all. Since plaintiff was unaware of the federal interpretation that failure to file a report would result in ineligibility to receive benefits, and since plaintiff relied upon past interpretation of the state that the maximum sanction to be imposed for failure to file a report would be loss of earned income disregards, it does appear that it would be unfair and manifestly unjust to apply defendants' interpretation of the law and regulation to her. The outcome in Marturello's case is particularly inequitable in light of the state defendants' pre-March 1987 policy of imposing only loss of earned income disregards as opposed to declaring a household totally ineligible for failure to file a monthly report. It is thus apparent that the result reached is unreasonable as applied to plaintiff and the court so holds.
 
 
 23
 App. at 240-41 (emphasis changed). See also Vierra v. Rubin, 915 F.2d 1372, 1378-79 (9th Cir.1990) ("Federal regulations stress that eligibility conditions must be applied on a consistent and equitable basis") (emphasis in original) (quotation omitted).
 
 
 24
 I would add one important point. On review of the Secretary's policy as formulated in FSA Regional Memorandum 87-1, I am convinced that at the time of its promulgation even the Secretary did not determine that nonfilers are categorically "ineligible" for assistance. Although the policy statement initially says that "[t]he assistance unit is ineligible[,]" the statement further explains that a state agency must begin recoupment efforts against a nonfiler because "the [assistance] unit, though not ineligible for failing to file a monthly report, would more likely be overpaid or ineligible because the determination of eligibility ... must be recomputed without benefit of the earnings disregard[.]" Id.; cf. Vierra, 915 F.2d at 1379 n. 6 (observing that the Secretary there argued that income report filing requirements "are factors independent of the general AFDC eligibility ... determinations"). Thus, the Secretary's adoption of a hardline, total ineligibility policy is a shift in the administrative interpretation and is unreasonable in light of his earlier position.
 
 
 25
 The Secretary says that "[a]lthough the result is severe," it is necessary as a deterrent. Brief for Appellant at 15. Conditions, however, do not necessarily demand the exaction of the most severe penalty imaginable. In enacting this humane and remedial statute, I am convinced Congress did not intend such a harsh penalty. See Vierra, supra at 1378 (Congress did not intend to punish "innocent late filers" with total benefit loss as a penalty). Accordingly, I must dissent.
 
 
 
 [1]
 Because we conclude that the statute is clear and unambiguous, we need not proceed to the secondary inquiry regarding the reasonableness of the agency's interpretation
 
 
 [1]
 The AFDC assistance level is determined on a monthly basis, taking into account any other income earned by the potential recipient. Notably, some outside income is "disregarded" each month when calculating need. Such income is commonly referred to as an "earned income disregard" ("EID"). To be eligible for an EID, recipients are required to file monthly income reports for each month in which they work. Under § 602(a)(8)(A)(ii), Utah DHS is required to apply an EID to "the first $90 of the total of such earned income for such month[.]"
 
 
 [2]
 Utah uses a retrospective budgeting system for determining the benefits level of AFDC assistance. Thus, Ms. Marturello's income in March would first be reflected in the computation for May's benefits
 
 
 [3]
 Starting in November 1987, Ms. Marturello filed monthly income reports which showed that her income was less than the amounts disregarded by law. Accordingly, her grant was unaffected thereafter. App. at 231 n. 8
 
 
 [4]
 Alternatively, since the statute empowers Utah DHS to temporarily withhold benefits pending receipt of a report, it is Utah DHS' interpretation of the Act whereby it refuses to accept reports after the month in which they are due which operates to permanently deprive Ms. Marturello of benefits for the past months when reports were not filed. In either instance, we must proceed beyond the first step of the Chevron analysis, which the majority opinion fails to do
 
 
 [5]
 Even if Congress were viewed as speaking to an enforcement remedy in (14)(A), I believe its language is ambiguous. Subparagraph (8), which provides for EIDs, contains an explicit cross reference to subparagraph (14), and therefore the two provisions are to be read together, creating confusion about the appropriate remedy for nonfiling. Moreover, this court has explained that "[a] statute may be ambiguous if its application leads to an irrational or absurd result." Ewing v. Rodgers, 826 F.2d 967, 970 n. 3 (10th Cir.1987). Construing subparagraph (14)(A) to require the total retroactive forfeiture of $3,073 in benefits--penalizing Amy Marturello and her children for her not reporting that she went to work and earned less than $350 in seven months--is irrational and absurd in light of the statute's purpose of aiding indigent families with young children. See also United States v. Public Util. Comm'r of California, 345 U.S. 295, 315, 73 S.Ct. 706, 717, 97 L.Ed. 1020 (1953) (courts must look beyond statutory language where "literal words would bring about an end completely at variance with the purpose of the statute")