Judith PRINCE, Appellant,

v.

DIVISION OF FAMILY SERVICES, Respondent.

No. WD 48694.

Missouri Court of Appeals, Western District.

Aug. 9, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied Nov. 22, 1994.

Edward Berg, Mid–Missouri Legal Services, Columbia, for appellant.

Linda Ray–McKenna, Mo. Dept. of Social Services–Legal Services Div., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and SMART and ELLIS JJ.

LOWENSTEIN, Presiding Judge.

Judith Prince appeals the Division of Family Services' (DFS) ruling that an overpayment, caused by DFS's own error, of sums Aid to Families with Dependent Children (AFDC) could be recouped from her on the grounds: 1) the decision was against the weight of the evidence, erroneously applied the law and was not supported by sufficient evidence; and 2) the state was estopped from recouping the overpaid sums. This court affirms the agency's decision as affirmed by the trial court.

Prince applied for AFDC benefits in October, 1990. She had two children. DFS determined she was eligible to receive $193.00 a month. Prince received these benefits from October, 1990 through January, 1991. In January, 1991 Prince's DFS caseworker discovered she had made an error in calculating Prince's income—she had forgotten to include tips Prince earned in her job working at a restaurant. When the tips were included, and Prince's eligibility was redetermined for each of the months she had received benefits, it was found she had not been entitled to any funds in 1989, and she had only been entitled to $129 in January, 1991. The total overpayment was $789. Prince was immediately notified, in January, 1991, that her AFDC benefits were terminated but her family remained eligible for Medicaid.

In June, 1992 Prince re-applied for AFDC benefits. At that time her children were 7 and 6 years old, and she was expecting a third child. It was determined she was eligible for a maximum of $293 a month. Generally, federal and state laws limit recoupment to a maximum of 10% of allowed monthly benefits. In essence, after a myriad of calculations, her net benefits were reduced over eight months.

The DFS Director affirmed the agency action of recouping the overpayment from Prince's 1990–91 grant. The director, and trial court, found that under state and federal laws and regulations, DFS was allowed to recoup the overpayment and that the agency was not equitably estopped from taking such action. On appeal there is no question as to the amount of overpayment nor that the error was the result of agency error. The court has had difficulty determining whether Prince contests the amount of monthly recoupment.

### STANDARD OF REVIEW

Review by this court is of the agency decision, not the circuit court's decision. *Missouri State Div. of Family Services v. Hill*, 816 S.W.2d 702, 703 (Mo.App.1993). If the findings of the agency are supported by substantial and competent evidence in the record, they must be affirmed, but if they are contrary to the determinative undisputed facts, the decision is arbitrary and unreasonable and must be reversed. *Id.* In order to determine whether the there is substantial evidence, this court considers only the evidence most favorable to the Director's decision. *Collins v. Div. of Welfare*, 364 Mo. 1032, 270 S.W.2d 817, 820 (Banc 1954). Substantial evidence, is evidence, which if true, has probative force; it is evidence from which the trier of fact reasonably could find the issues in harmony therewith. *Id.* 270 S.W.2d at 820. As applicable here, this court also reviews to see whether the Director's decision exceeds DFS' statutory authority and jurisdiction and was authorized by law. *Haynes v. Missouri State Div. of Family Services*, 874 S.W.2d 457, 459 (Mo.App.1994).

### PROPRIETY OF RECOUPMENT

Prince's first point essentially alleges DFS improperly determined that recoupment was appropriate. She asserts recoupment is erroneous under federal and state laws and regulations in that: 1) the overpayment was not her fault; 2) it was not done promptly,

pursuant to federal laws and regulations; and 3) it would cause an undue hardship.

■ AFDC was enacted by Congress in 1935, as part of the Social Security Act to provide financial assistance to dependent children. *Couch v. Perales*, 78 N.Y.2d 595, 578 N.Y.S.2d 460, 463, 585 N.E.2d 772, 775 (1991). The program is a joint federal and state effort to help needy families with children. *King v. Smith*, 392 U.S. 309, 314–16, 88 S.Ct. 2128, 2131–33, 20 L.Ed.2d 1118 (1968). AFDC is a gratuity of the state which may be granted by its legislature upon such terms and conditions as it deems proper. *Ambrose v. State Dept. of Public Health & Welfare*, 319 S.W.2d 271, 274 (Mo.App. 1958).[1] The State has "undisputed power" under the provisions of the Social Security Act to set both the level of benefits and the standard of need. *King v. Smith*, 392 U.S. at

334, 88 S.Ct. at 2141–42. If a state chooses to voluntarily participate in the AFDC program, it must follow the provisions and regulations of Title IV–A of the Social Security Act and all applicable federal legislation and implementation regulations. *Johnston v. Iowa Dept of Human Services*, 932 F.2d 1247, 1249 (8th Cir.1991) (citing *Heckler v. Turner*, 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138 (1985)); *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972). In 1981 Congress, as part of the Omnibus Budget Reconciliation Act of 1981 (OBRA), mandated that a state collect any overpayment of welfare aid. *Id.* at 1249. Prior to that time, the states were not required to recover overpayments unless they were a result of fraud by the recipient. *Id.* The relevant provisions are set out in 42 U.S.C. § 602(a)(22). *Id.*[2] Further guidance is provided in 45 CFR 233.20(13) (1991).[3]

1. However, once given, "It may be more realistic to today to regard welfare entitlement as more like 'property' than a 'gratuity' ..." *Hill v. State Dept. of Public Health and Welfare*, 503 S.W.2d 6, 9 (Mo.1973). Therefore, before benefits are terminated there is a requirement for notice and a hearing if desired. *Id.*

2. 42 U.S.C. § 602

(a) A State plan for aid and services to needy families with children must—...

(22) provide that the State agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan, and, in the case of—

(A) an overpayment to an individual who is a current recipient of such aid (including a current recipient whose overpayment occurred during a prior period of eligibility), recovery will be made by repayment by the individual or by reducing the amount of any future aid payable to the family of which he is a member, except that such recovery shall not result in the reductions of aid payable for any month, such that the aid, when added to such family's liquid resources and to its income (without application of paragraph (8)), is less than 90 percent of the amount payable under the State plan to a family of the same composition with no other income ...

3. *Recovery of overpayments and correction of underpayments for AFDC.* (i) Specify uniform Statewide policies for recovery of overpayments of assistance, including overpayments resulting from assistance paid pending hearing decisions. Overpayment means a financial assistance payment received by or for an assistance unit for the payment month which exceeds the amount for

which that unit was eligible. (The agency may deny assistance for the corresponding payment month rather than recover if the assistance unit was ineligible the budget month, the State becomes aware of the ineligibility when the monthly report is submitted, the recipient accurately reported the budget month's income and other circumstances, and the assistance unit will be eligible for the following payment month.)

(A) **The State** *must* take *all* **reasonable steps necessary to promptly correct** *any* **overpayment.**

(1) *Any recovery of an overpayment to a current assistance unit, including a current assistance unit or recipient whose overpayment occurred during a prior period of eligibility, must be recovered through repayment (in part or in full) by the individual responsible for the overpayment or* recovering the overpayment *by reducing the amount of any aid payable to the assistance unit of which he or she is a member, or both.*

(2) If recovery is made from the grant, such recovery shall result in the *assistance unit retaining,* for any payment month, from the combined aid income and liquid resources ... *not less than 90 percent of the amount payable under the State plan to a family of the same composition with no other income.* Where a State chooses to recover at a rate less than the maximum, it must recover promptly.

(B) The State shall recover an overpayment from (1) the assistance unit which was overpaid ...

(E) **Prompt recovery of an overpayment:** a State must take one of the following three actions by the end of the quarter following the quarter in which the overpayment is first identified:

(The 1991 CFR provision is applicable due to the time of overpayment.) Missouri's applicable provisions are set out in 13 CSR 40–2.190 (1986)[4], 13 CSR 40–2.120[5] and § 207.020 RSMo 1986.[6]

First, Prince asserts recoupment is inappropriate because the overpayment was not due to any action, or inaction, on her part. While it is unfortunate Ms. Prince has to repay the money despite a lack of fault on her part, the recovery was appropriate. The state agency is required "to promptly take *all* necessary steps to correct *any* overpayment." 45 CFR 233.20; 42 U.S.C. 602(a)(22). When interpreting statutes, the cardinal rule is that the intent of the legislature controls. *Tribune Pub. Co. v. Curators of Univ. of Mo.* 661 S.W.2d 575, 583 (Mo.App.1983). When interpreting agency regulations, if the intent of Congress is clear, there is no further interpretation needed; if not clear then this court is to defer to a reasonable agency interpretation. *Chevron United States Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 843–44, 104 S.Ct. 2778, 2781, 2781–83, 81 L.Ed.2d 694 (1984). The first source in determining legislative intent is in examining the words used. *Id.* This court interprets the statute and regulations in light of the purposes the legislature intended to accomplish and the evils it intended to cure. *Appleby v. Dir. of Revenue,* 851 S.W.2d 540, 541 (Mo.App.1993). The term "all" means every and "any" means without restriction or limitation. *Tambe v. Bowen,*

> (1) Recover the overpayment, (2) initiate action to locate and/or recover the overpayment from a former recipient, or (3) execute a monthly recovery agreement from a current recipient's grant or income/resources....
> (45 CFR 233.20 1991 (emphasis added).

**4.  13 CSR 40–2.190   Procedure for Collection of Overpayment**

> Purpose: this rule outlines procedures for collection of payments made to claimants of assistance when claimants were ineligible for payments.
> (1) Restitution and recovery may be required if at any time it is determined that a recipient has received benefits to which s/he was not entitled because of a state or federal statutory or regulatory requirement.

**5.** Methods used to determine the amount of Cash Payment. This provision will not be laid out here, it outlines the method used to determine

839 F.2d 108, 110 (2nd Cir.1988); *Edwards v. McMahon,* 834 F.2d 796, 799 (9th Cir.1987). The terms are clear and unambiguous therefore no further interpretation is necessary. The mandatory overpayment provision as part of the OBRA was enacted with the purpose of helping the federal budget, and as such, attempts to limit federal grant money to only those displaying eligibility to receive those funds. *Johnston,* 932 F.2d at 1249.

45 CFR 233.20 provides there must be "recovery by the individual responsible", "or recovering the overpayment by reducing the amount of aid payable to the assistance unit of which he or she is a member, or both." The second clause does not provide for any sort of fault. Furthermore, there are other provisions which are applicable where it is the recipient's fault, i.e. overpayment due to fraud, failure to file report of additional income received.[7] Thus, all overpayments are to be recovered, "no matter the magnitude of the payment or the source of the error causing the overpayment." *Johnston,* 932 F.2d at 1249; *Rosas v. McMahon,* 945 F.2d 1469, 1474 fn. 7 (9th Cir.1991). If an ineligible family receives benefits, it is considered an overpayment and must be collected from the family. *See Johnston,* 932 F.2d at 1249; *Marturello v. Angus,* 957 F.2d 732 (10th Cir.1992). Appellant's argument regarding fault fails. DFS is allowed by law to recoup the amount of overpayment.

the correct payments in the various assistance programs.

**6.  § 207.020   Division of family services powers**

> 1.  In addition to the powers, duties and functions vested in the division of family services by other provisions of this chapter or by other laws of this state, the division of family shall have the power: ...
> (3) To administer, disburse of an account for funds, ... and any kind of property given, granted, loaned, advanced to or appropriated by the state of Missouri for any of the purposes herein; ...
> (5) to adopt amend and repeal rules and regulations necessary to desirable to carry out the provisions of this chapter which are not inconsistent with the constitution or laws of this state; ...

**7.**  42 U.S.C. 602(a)(14).

Prince next asserts DFS was not entitled to recover the funds because they were not collected promptly. She asserts the provision in 45 CFR 233.20(13)(i)(E), supra footnote 3, which calls for the state to take action by the end of the quarter following the quarter in which the overpayment was first identified, acts as a statute of limitations; and the agency had to take action against her by June 31, 1991 or lose its right to recoup. Generally, time periods for administrative actions, are "characterized as directory unless time is of the essence of the act required, the [governing] statute contains negative language denying the exercise of authority beyond the period prescribed for action, or a disregard of the relevant portion would injuriously affect public interests or private right." *Cudal v. Sunn,* 69 Haw. 336, 742 P.2d 352, 356 (1987) (quoting *Perry v. Planning Commission,* 62 Haw. 666, 619 P.2d 95, 102 (1980)); *Anderson v. Commissioner of Dept. of Human Services,* 489 A.2d 1094, 1097–98 (Me.1985). Where the directions are to assist in the proper, orderly and prompt conduct of business, and where the failure to obey does not cause prejudice to occur, they are not usually considered mandatory. *Anderson,* 489 A.2d at 1098. Several courts have interpreted this provision and declared it does not act as a statute of limitations. *See Obert v. Colorado Dept of Social Services,* 766 P.2d 1186, 1191 (Colo.1988) cert. denied 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1039 (1989); *Edwards v. McMahon,* 834 F.2d 796 (9th Cir.1987); *Eherenstorfer v. Div. of Pub. Welfare,* 196 N.J.Super. 405, 483 A.2d 212 (App.1984); *Burton v. Dept of Health and Social Services,* 103 Wis.2d 670, 309 N.W.2d 388 (App.1981).

Congress set no time limit for the recovery or adjustment of overpayments and underpayments. That the regulation in question reflects the congressional will not to have a "statute of limitations" barring the recovery of overpayments is substantiated by the history of the regulation as recorded in the Federal Register. The departmental view reflected there is that "the Act requires correction of any overpayment or underpayment." Given the general purpose of the ... Act to "restrain federal spending" ... the lack of any indi-

cation that "time is of the essence of the act[tion] required" or the ... agency's "exercise of authority beyond the period prescribed for action" has been curtailed and the fact that a "disregard of the relevant provision would [not] injuriously affect ... private rights," ... we can only conclude the regulation in question is directory although obligatory in form.... *Cudal,* 742 P.2d at 357. (cites omitted).

In light of the fact that the provision is directory, and caused no prejudice, it was not erroneous for the agency to recover the overpayment after June 31, 1991. This point is denied.

The last part of Prince's first point is that the recoupment would cause her and her children undue hardship. The agency is allowed to recoup up to 10% of her assistance benefits pursuant to the federal guidelines. There is no evidence in the record which indicates the Prince family will bear an undue hardship. Prince will still get at least 90% of her AFDC entitlement. This point is denied.

### *ESTOPPEL*

In her second point, Prince asserts estoppel against the government. In order to invoke equitable estoppel there must be proof of: 1) a statement or act by government entity inconsistent with the subsequent government act; 2) the citizen relied on the act; and 3) injury to the citizen. *Independent Stave Co. v. Missouri Highway & Transp. Com.* 702 S.W.2d 931 (Mo.App.1985). Additionally, "[f]undamental to an estoppel claim against the government is that in addition to satisfying the elements of ordinary estoppel, the governmental conduct complained of must amount to affirmative misconduct." *Riley v. Director of Revenue,* 869 S.W.2d 273, 275 (Mo.App.1994) (citing *Farmers' & Laborers' Co-operative Ins. Assoc. v. Dir. of Revenue,* 742 S.W.2d 141, 143 (Mo. banc 1987)); *Eston v. Aman,* 847 S.W.2d 902, 907 (Mo.App.1993) (an AFDC case). Equitable estoppel against the government is limited to exceptional circumstances where there is a manifest injustice. *Murrell v. Wolff,* 408 S.W.2d 842, 851 (Mo banc.1966). Here there is no proof of affirmative misconduct by the

government. It was merely an error by Prince's caseworker which caused the overpayment. *Johnston,* 932 F.2d at 1250; *Anderson,* 489 A.2d at 1099. This court need not look at any of the other elements of estoppel to reach the determination that estoppel does not apply under this set of facts. Point two denied.

All concur.