

# In the Missouri Court of Appeals
# Eastern District

DIVISION FOUR

| | | |
|---|---|---|
| SEDZIDA DOLIC, | ) | No. ED103726 |
| | ) | |
| Petitioner/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | |
| MISSOURI DEPARTMENT OF SOCIAL | ) | Honorable Gloria Clark Reno |
| SERVICES, FAMILY SUPPORT | ) | |
| DIVISION, | ) | |
| | ) | |
| Respondent/Respondent. | ) | Filed: June 21, 2016 |

## Introduction

Sedzida Dolic (Appellant) appeals from the decision of the St. Louis County Circuit Court affirming the decision of the Director (Director) of Missouri Department of Social Services, Family Support Division (Division) establishing a claim for overpayment of MO HealthNet for Families (MHF or Medicaid) benefits in the amount of $8,367.66. We dismiss in part, affirm in part, reverse in part, and remand with directions.

## Factual and Procedural Background

On March 15, 2011, Appellant applied for MHF benefits for her infant daughter, Edna Dolic (Edna). Appellant supplied the Division's eligibility specialist with her 2010 federal income tax return. The Division worker advised Appellant that based on her income, her daughter, Appellant, and her husband, Asmir, all qualified for coverage.

Relying upon the representation of the Division's eligibility specialist, Appellant applied for coverage for herself, her daughter, and her husband.

On March 16, 2011, the Division sent Appellant a MO HealthNet Action Notice, indicating her family had been approved for MHF coverage. Approximately one year later, during an annual review, the Division discovered its representative had incorrectly used Appellant's adjusted gross income instead of gross income in determining Edna's eligibility for benefits and informing Appellant her entire family was eligible for benefits. On April 23, 2012, the Division mailed Appellant a notice stating the Dolics' MHF coverage was discontinued effective April 20, 2012.

On August 22, 2012, the Division mailed Appellant an Adverse Action Notice seeking to establish a claim of $8,367.66 for public assistance the Dolics received from March 2011 through April 2012. Appellant requested an administrative hearing.

On November 26, 2013, a hearing was held before the Director, at which Appellant represented herself. At the hearing, the Division was represented by Jim Dieckmeyer (Dieckmeyer), a Program Integrity Unit employee, who offered twelve exhibits to support the Division's action. Appellant initially objected to the admission of the Division's exhibits but upon being told by the Director that Appellant would be able to testify and ask questions about the exhibits after they were entered into evidence, Appellant ceased objecting to the admission of the Division's exhibits.

Dieckmeyer did not present any testimony regarding how the Division determined the amount of the alleged claim. Instead, he offered into evidence Exhibit 11, a computer printout with additional handwritten entries, which he described as follows: "It's a five page exhibit. This is a report from state office giving the total amount of medical

overpayment that occurred in the period of March 2011 through April 2012 of $8,367.66."

Appellant presented the following testimony at the hearing:

[Director]: Okay. [Appellant], tell me why you disagree with the decision of the Agency to establish a claim?

[Appellant]: Because, first of all, I feel like I haven't done anything wrong. All I've done is applied and don't know what are the guidelines that they go by, so they – all they requested from [me] was a copy of my taxes in order to qualify. And I only applied for my child, my daughter, and they said based on looking at the income being so low that we both qualified, so she said we should just both – have you both applying because you qualify, so I don't know what they did and how they counted it to come up with this and why they didn't check this sooner that I'm not this far into debt. And another issue I have, once I went back and they told me what my actual income was taken in consideration, every time I spoke to a person at South County, everybody told me a different thing as far as what is allowed on my self-employed taxes and what is not. So, I don't – I don't even have no clue what they allow and what they don't allow because one of the items on my taxes that they said that don't – are not allowed, our actual business. It's my husband is a truck driver –

[Director]: uh-huh.

[Appellant;] (indiscernible) a truck and we have trailer; that's the whole business. Without the trailer, you don't have a business. So, they said that that was not allowed because the way – where it was put in the line of the taxes. So, once – how they explained it to me up at the South County was it's all what Missouri allows. And he said that it's possible you went back and checked your taxes and see if there's different ways that they can legally do them and see if it is allowed because it sounds – it all depends how tax person does them. He said there's different ways that they do them and he might have just put your business cost at the spot where Missouri doesn't allow it. So, (indiscernible) list of which lines of the taxes aren't allowed for me, I could at least talked to my tax person and see if my taxes are properly done or it could be (indiscernible) check and see if my actual business equipment is allowed to be claimed.

Following the hearing, the Director prepared a "Decision and Order" concluding "the [Division's] proposed establishment of a claim of overpayment of MHF benefits to [Appellant] in the amount of $8,367.66 is AFFIRMED" and ordering the Division "shall

3

undertake whatever actions are necessary to implement the above Decision in a timely manner."

Appellant appealed the Director's decision to the St. Louis County Circuit Court. At the court's request, the Division filed a document setting forth additional information detailing the expenditures purportedly made by the State on behalf of the Dolic family. The circuit court entered a judgment affirming the Division's establishment of a claim for recoupment against Appellant but modifying the amount of the claim to account for the Division's admission that Edna was, in fact, eligible for benefits during the applicable time period. The circuit court ordered the Director to set the claim amount to $7,377.66 for recoupment of expenditures made on behalf of Appellant and Asmir Dolic. This appeal follows.

## Points Relied On

In her first point on appeal, Appellant argues the Division erred in collecting the MHF overpayment through a means other than decreasing, suspending, or entirely withdrawing future Medicaid benefits.

In her second point on appeal, Appellant contends the Division erred in collecting a MHF overpayment when the benefits were not received through misrepresentation or nondisclosure of material facts or a failure to report any changes in status or correct information with respect to property or income.

In her third point on appeal, Appellant argues the Division violated the due process requirements of the Medicaid Act and the Fourteenth Amendment to the United States Constitution by issuing legally insufficient notice of the MHF overpayment claim

4

and misleading Appellant regarding her eligibility and the circumstances in which she would have to repay the Division for overpaid benefits.

## Standard of Review

Article V, Section 18 of the Missouri Constitution establishes the standard of judicial review of administrative actions. When reviewing an administrative action, this Court reviews the determination of the agency, not the circuit court. Albanna v. State Bd. of Registration for Healing Arts, 293 S.W.3d 423, 428 (Mo. banc 2009). This Court reviews the agency action to determine whether the agency's findings are supported by competent and substantial evidence on the record as a whole; the decision is arbitrary, capricious, unreasonable, or involves an abuse of discretion; or the decision is unauthorized by law. M.A.H. v. Missouri Dept. of Soc. Services, 447 S.W.3d 694, 696-97 (Mo. App. E.D. 2014). On review, we defer to the Commission's findings of fact and determinations of credibility. George v. Civil Serv. Comm'n of City of St. Louis, 318 S.W.3d 266, 269 (Mo. App. E.D. 2010). Questions of law are reviewed *de novo*. Albanna, 293 S.W.3d at 428.

## Discussion

### Point I – Method of Collection Not Ripe for Review

In her first point, Appellant challenges the Division's method of collection on the alleged overpayment of Medicaid benefits. Appellant contends the Division is only authorized to collect Medicaid overpayments through decreasing, suspending, or entirely withdrawing future Medicaid benefits pursuant to Section 208.010 RSMo Supp. 2010, and the Division may not seek restitution or recovery of the overpayment in any other manner.

5

Section 208.010.2(3) RSMo Supp. 2010 provides in relevant part:

2. Benefits shall not be payable to any claimant who:

…

(3) Has received, or whose spouse with whom he or she is living has received, benefits to which he or she was not entitled through misrepresentation or nondisclosure or material facts or failure to report any change in status or correct information with respect to property or income as required by Section 208.210. A claimant ineligible pursuant to this subsection shall be ineligible for such period of time from the date of discovery as the division of family services may deem proper; or in the case of overpayment of benefits, future benefits may be decreased, suspended or entirely withdrawn for such period of time as the division may deem proper[.]

The Division correctly asserts, however, that Appellant's Point I is not ripe for review. It is clear from Appellant's point she is not appealing the establishment of the claim, but only the method of collection. At this point, the Division has only sought to establish a claim for overpayment and has not yet attempted to execute on that claim in any manner. Because the Division has not taken any action to collect on the claim, this Court cannot review the propriety of the Division's not-yet-determined method of collection.[1] Hassan v Division of Employment Sec., 389 S.W.3d 290, 293-94 (Mo. App. W.D. 2013)(appeal dismissed because appellant was not appealing the commission's finding of an overpayment of benefits but the potential future method of collection). Appellant's Point I is dismissed.

<u>Point II – Authority to Collect the Overpayment</u>

In her second point, Appellant contends the Division erred in collecting a Medicaid overpayment when the benefits were not received due to any misrepresentation,

---

[1] This Court's resolution of the collection issue on the basis of ripeness is not a bar to Appellant's ability to challenge any collection attempt by the Division in the future. See Prince v. Division of Family Services, 886 S.W.2d 68, 73 (Mo. App. W.D. 1994) (raising the defense of estoppel in the State's collection action for overpayment of public assistance benefits).

6

nondisclosure, or failure to report a change in status or correct information with respect to property or income on her part. Although Appellant's point on appeal suggests she is challenging the "collection" of the overpayment similar to her first point, in substance Appellant's Point II challenges the Division's authority to establish a claim of overpayment of benefits when the overpayment was the result of the agency's error. Appellant contends Section 208.010.2(3) authorizes the Division to collect overpayment of Medicaid benefits only from someone who received benefits he or she was not entitled to "through misrepresentation or nondisclosure of material facts or failure to report any changes in status or correct information with respect to property or income[.]" Appellant maintains because the overpayment was a result of agency error and not due to a misrepresentation or failure to disclose on her part, the Division has no statutory authority to collect the overpayment from her.

Section 207.020.1 RSMo Supp. 1993, sets forth the powers and duties of the Division to administer public assistance programs. 13 C.S.R. 40-2.190, promulgated pursuant to Section 207.020 and titled "Procedure for Collection of Overpayments", states "Restitution and recovery may be required if at any time it is determined that a recipient has received benefits to which s/he was not entitled because of a state or federal statutory or regulatory requirement."

Section 205.967.1 RSMo 1981 provides in relevant part:

1. As used in this section:
   (1) "Public assistance benefits, programs and services" means anything of value, including…drugs and medicine, and any service, including medical care…provided pursuant to chapters 198, 207, 208, 209 and 660, or benefits, programs, and services provided or administered by the department of social services;
   (2) The term "person" means any individual…who received any form of public assistance benefit in any manner for any reason.

7

…

5. If during the life or on the death of any person… it is found that the recipient was possessed of income or property in excess of the amount reported or ascertained at the time of granting assistance, and if it be shown that such assistance was obtained by an ineligible recipient, the total amount of the assistance may be recoverable by the director of the department of social services as a seventh class claim from the estate of the recipient or in an action brought against the recipient while living.

Furthermore, Section 208.210.2, titled "Undeclared income or property – benefits may be recovered by department of social services, when" states:

Any benefits paid when the recipient or the recipient's spouse is in possession of such undeclared property or income shall be recoverable by the department of social services as a debt due to the state. *If during the life*, or upon the death, *of any person who is receiving or has received benefits*, it is found that the recipient or the recipient's spouse was possessed of any property or income in excess of the amount reported that would affect his or her needs or right to receive benefits, or if *it be shown such benefits were obtained* through misrepresentation, nondisclosure of material facts, or *through mistake of fact, the amount of benefits, without interest, may be recovered from him or her* or his or her estate *by the department of social services as a debt due the state.*

(Emphasis added.)

Although there is no dispute the overpayment of benefits in this case was solely the result of the Division's actions, these statutes do not require the Division to prove misconduct by the recipient for it to collect in the event of an overpayment of benefits. Section 208.210.2 specifically states the amount of benefits may be recovered from any person who received benefits due to a mistake of fact. The agency's miscalculation of Appellant's income was a mistake of fact. Even though the agency's actions, which included encouraging Appellant to apply for benefits she was not seeking, resulted in the agency's extension of Medicaid benefits to Mr. and Mrs. Dolic despite their ineligibility, Appellant has received an overpayment of benefits, which the State may recover. The

8

agency may establish a claim for the overpayment of benefits even though the benefits were not received due to Appellant's misrepresentation, nondisclosure, or failure to report a change in status or correct information with respect to property or income. Appellant's Point II is denied.

## Point III – Due Process

In her third point, Appellant argues the agency violated her due process rights because the Adverse Action Notice dated August 22, 2012, purporting to establish a claim of $8,367.66 fails to comply with procedural due process, in that it does not fully inform Appellant of the case against her in order for her to adequately contest the Division's action. Appellant argues neither the notice nor the record contains information explaining how the Division determined the amount of the claim.

"'The due process clauses under the United States and Missouri constitutions prohibit the taking of life, liberty, or property without due process of law.'" State ex rel. Missouri Pipeline Co. v. Missouri Pub. Serv. Comm'n, 307 S.W.3d 162, 174 (Mo. App. W.D. 2009), as modified (Feb. 2, 2010), quoting Colyer v. State Bd. of Registration for the Healing Arts, 257 S.W.3d 139, 144 (Mo. App. W.D. 2008). "Due process requires notice and a hearing; moreover, the adequacy of the notice and the hearing must be evaluated in the context of the specific procedure at issue, in this case, an administrative proceeding." State ex rel. Missouri Pipeline Co., 307 S.W.3d at 174.

> "In an administrative proceeding, due process is provided by affording parties the opportunity to be heard in a meaningful manner. The parties must have knowledge of the claims of his or her opponent, [and] have a full opportunity to be heard, and to defend, enforce and protect his or her rights." [Citation omitted] "A party to an administrative hearing must be given the opportunity to hear evidence submitted against him, to confront and cross-examine witnesses, and to rebut testimony of such witnesses by evidence on his own behalf."

9

Id. (internal citations omitted).

The Division must maintain a hearing system that meets the due process standards set forth in Goldberg v. Kelly, 397 U.S. 254, 267-68, 90 S. Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). 42 C.F.R. § 431.205(d). "'The fundamental requisite of due process of law is the opportunity to be heard.'" Goldberg, 397 U.S. at 267 (requiring hearing prior to termination of some types of public assistance benefits), quoting Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914).

> The hearing must be 'at a meaningful time and in a meaningful manner.' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.

Goldberg, 397 U.S. at 267-68.

Goldberg further dictates the judgment must rest solely upon the legal rules and evidence adduced at the hearing and states "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." Id. at 270-71.

In addition to the constitutional requirements for a fair hearing outlined in Goldberg, 397 U.S. 254, and its progeny, federal regulation 42 C.F.R. § 431.205 prescribes further procedural safeguards. 42 C.F.R. § 431.205(d) specifically requires the hearing system to satisfy any additional standards specified by the federal regulations.

10

Featherston v. Stanton, 626 F.2d 591, 593 (7th Cir. 1980). The requirements for "Fair Hearings for Applicants and Beneficiaries" are outlined in 42 C.F.R §§ 431.200 to 431.250.

The agency's notice must be written and contain a statement of what action the agency intends to take, the reasons for the intended action, the specific regulations that support the action, and an explanation of the recipient's right to request an administrative hearing. 42 C.F.R. § 431.210. In this case, the Adverse Action Notice dated August 22, 2012, stated Appellant was required to repay pursuant to 13 C.S.R. 40-2.190(1), $8,367.66 in MHF benefits she incorrectly received from March 2011 through April 2012 due to "an income budgeting error." The Adverse Action Notice advised Appellant she had the right to a hearing if she disagreed with the agency's decision. This notice satisfied the bare minimum requirements of due process as set forth in 42 C.F.R. § 431.210. However, the minimal notice combined with the subsequent actions of the agency amounted to a denial of Appellant's right to procedural due process.

42 C.F.R. § 431.242, titled "Procedural rights of the applicant or beneficiary" provides:

> The applicant or beneficiary, or his representative, must be given an opportunity to—
> (a) Examine at a reasonable time before the date of the hearing and during the hearing:
> (1) The content of the applicant's or beneficiary's case file; and
> (2) All documents and records to be used by the State or local agency or the skilled nursing facility or nursing facility at the hearing;
> (b) Bring witnesses;
> (c) Establish all pertinent facts and circumstances;
> (d) Present an argument without undue interference; and
> (e) Question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses.

42 C.F.R. § 431.242.

On December 5, 2012, the agency sent Appellant a Notice of Administrative Hearing advising Appellant of the time and place of her telephone hearing. Contrary to the Division's assertion at oral argument, the Notice of Administrative Hearing did not notify Appellant that she could obtain copies of the pertinent documents prior to her hearing. Instead, it advised Appellant she must arrive at the hearing "at least 30 minutes" prior to the time of her scheduled hearing if she wanted to "review the proposed exhibits prior to the hearing[.]"

At the hearing, when the Division began offering its exhibits into the record, Appellant initially objected to their admission. When Appellant objected to the admission of Exhibit 1 because it contained incorrect income information, the Director told Appellant, "Okay. And I'll have you testify about that when it comes your turn to testify." When Appellant then objected to the admission of Exhibit 2 due to possible inaccuracies because Appellant received conflicting information from agency employees about the business income information contained therein, the Director again told Appellant: "Okay. And you'll be allowed to ask questions once these are entered [into evidence.]" Following these exchanges Appellant ceased objecting to the admission of the Division's exhibits.

On appeal, Appellant argues neither the notice nor the record explains how the amount of the Division's claim was determined because the Division presented no testimony regarding its determination and the Division's exhibit purporting to support its determination, Exhibit 11, contains no explanation of the figures used in computing the claim nor the Division's rationale for including any of the figures in its computation of

12

the claim. Appellant contends she does not know how the Division determined the sum she allegedly owes, including whether the Division factored in Edna's eligibility.

Exhibit 11 is best described as a computer printout of an incomprehensible list of dates and numbers. It contains no provider names and no service details other than "Drug," "Medical," "Outpatient," and "Capitation Payment." It contains an unexplained column of numbers under the heading "ICN" for which this Court cannot decipher any sort of pattern or meaning. The printout appears to be solely for Appellant and contains what appears to be a specific "DCN" number for Appellant. However, a great deal of the exhibit appears to include charges for a different "DCN" number. The Division attempted to rectify this deficiency by penciling in Asmir's name next to this "DCN" number on the first page of the exhibit. The exhibit also shows amounts not included on the original printout penciled in by an unknown party.

While the Division contends its judgment withstands scrutiny because Exhibit 11 contains dates and figures under a column marked "PAIDAMT," when all of the figures under the "PAIDAMT" column are added together it amounts to $7,377.66. The Director concluded, however, that the Division had established a claim for $8,367.66. This amount is reached only if one adds an additional $990, an amount presumably divined from the unexplained calculations scribbled on the first page of the exhibit under the handwritten heading "3 phh CHIP74." The Division takes the position that this Court can simply ignore the additional sums and modify the amount of the claim similar to the circuit court. We disagree.

This Court reviews the determination of the agency, not the circuit court, and reviews the agency's action to determine whether the agency's findings are supported by

13

competent and substantial evidence on the record as a whole. Albanna, 293 S.W.3d at 428; M.A.H., 447 S.W.3d at 696-97. In modifying the Director's determination, the circuit court relied on additional information submitted by the Division that was neither before the agency nor properly before this Court. This includes documentary evidence purporting to detail the expenditures made by the State on behalf of the Dolic family as well as the Division's admission that Edna was, in fact, eligible for coverage and it had erred in adding an additional $990 to its claim. Federal constitutional due process requires the judgment to rest solely upon the evidence adduced at the administrative hearing. Goldberg, 397 U.S. at 270-71.

When viewed in full, the sequence of events in this case demonstrates Appellant's due process rights were violated. While the Adverse Action Notice meets the bare minimum requirements, the notice combined with the lack of adequate hearing procedures violated Appellant's due process rights. The notice provided by the Division simply stated Appellant was required to repay $8,367.66 for the overpayment of benefits. The Division did not provide Appellant with any information advising her how it determined this amount. As noted by Appellant's counsel during oral argument, Appellant did not receive a cash benefit and there is no evidence suggesting Appellant possessed any independent knowledge of the amounts allegedly paid on her behalf. It appears the Division is seeking the repayment of funds the State paid to third-party providers. The sole piece of evidence presented against Appellant at the hearing purporting to support the amount of the agency's claim lacks necessary information to enable Appellant to contest the agency's allegations. Without information regarding the

14

providers allegedly paid or the services allegedly rendered, it is impossible for Appellant to effectively dispute the agency's evidence.

Appellant was not afforded a reasonable time prior to the date of the hearing to examine the documents the State intended to use as evidence against her, the Director actively discouraged Appellant from objecting to the evidence presented against her, and the Division failed to present evidence in support of its claim that contained the basic information necessary for Appellant to refute the Division's evidence. The agency's actions violated Appellant's federal statutory due process rights as set forth in 42 C.F.R. § 431.242, including her rights to establish all pertinent facts and circumstances; present an argument without undue interference; and question or refute the Division's evidence against her. Appellant is entitled to a new hearing that comports with state and federal due process requirements.

As an aside, the Division has acknowledged there is no federal or state mandate requiring it to collect the overpayment of Medicaid benefits occasioned by governmental error. Conferred with such discretion, the Division should exercise it in a way that comports with common sense, equity, and fairness. In circumstances such as these, where the state agency encouraged Appellant to apply for and collect Medicaid benefits; Appellant was forthright, honest, and fair; and the State admits it was the impetus for the overpayment, perhaps the State should consider whether collection against an individual whose income is of such a nature that her daughter is, nevertheless, entitled to receive medical benefits from the State, is the optimal use of its resources. The State might be better served if those resources were allotted to efforts to improve the system which caused this unnecessary error and expense.

15

For the reasons discussed herein, we reverse and remand to the Director for a rehearing to establish the amount of the alleged overpayment of benefits to Appellant. Appellant's Point III is granted.

Conclusion

The judgment of the trial court is dismissed in part, affirmed in part, reversed in part, and remanded with directions.

_Sherri B. Sullivan_
SHERRI B. SULLIVAN, P.J.

Kurt S. Odenwald, J., and
Lisa P. Page, J., concur.