In the Matter of Irvin E. WILKINSON, Respondent,

v.

John BRUNE, Appellant.

No. 47896.

Missouri Court of Appeals,
Eastern District,
Division Six.

Oct. 30, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1984.

Charles J. McEnery, Jr., Clayton, for appellant.

Briegel, Dempsey, Baylard & Patane, P.C., Union, for respondent.

REINHARD, Chief Judge.

This is an appeal from two orders of the Circuit Court of Franklin County, Probate Division. One order provided that the widow's election to take her statutory share of

decedent's estate would be charged proportionately against all beneficiaries of the will, rather than against the residuary estate. The other order apportioned among beneficiaries the cost of certain payments made from decedent's estate, rather than charging it to the residuary beneficiary as a debt of the estate. John Brune, a specific legatee, appeals both orders.

Irvin and Albert Wilkinson, brothers, owned three parcels of land as tenants in common, and approximately $49,000 in joint accounts and certificates of deposit with right of survivorship. Albert individually owned 107 shares of bank stock, 300 shares of stock in U.S. Steel, $1,109 in cash, and a debenture in U.S. Steel.

Albert died testate on May 5, 1979. He devised all his estate to his brother Irvin, and appointed Robert Vossbrink as his personal representative. Albert's estate owed approximately $27,400 including $19,000 in federal and state inheritance and estate taxes. The debenture in U.S. Steel was sold, and Albert's liquid assets reduced the obligations to approximately $23,500.

Before Albert's estate was closed, Irvin died. He appointed Vossbrink and John Brune as his personal representatives. Vossbrink and Brune paid $23,500 out of Irvin's estate in order to close Albert's estate. Irvin's will provided:

*FIRST:* I direct the payment of all my just debts and funeral expenses.

*SECOND:* To my wife, Emma Mae Wilkinson, I give and bequeath one-third (⅓) of my estate as finally determined for federal estate inheritance tax purposes. This bequest to be in lieu of any and all other allowances of whatsoever nature provided by law.

*THIRD:* To my friend, John Brune, of Franklin County, Missouri, I give devise and bequeath my home farm with all improvements thereon.... This bequest is subject, however, to a one-acre tract upon which is located the Wilkinson family cemetary located on the above tract of land which cemetary is to be maintained and cared for by said John Brune and his executors, administrators, successors and assigns. This is also subject to the right of my wife, Emma Mae Wilkinson, to occupy the residence on said farm as long as she desires to use and occupy the house as her home.

*FOURTH:* Any stock or debentures that I may have in United States Stell [sic] Corporation at the time of my death, I give and bequeath to Otto N. Horn, to have and to hold, absolutely.

*FIFTH:* All of the rest, residue and remainder of my property and estate, of every kind, I give, devise and bequeath to my friend, Emmet Ming, to have and to hold, absolutely.

*SIXTH:* All estate taxes, inheritance taxes and successive duties assessed ... against my estate shall be paid by my executors out of the general assets of my estate and thereafter the such taxes shall be apportioned between the beneficiaries of my estate and each beneficiary shall contribute to my estate his or her proportionate share of such taxes and no bequest to any beneficiary shall become final until the beneficiary's share has made full contribution to my estate, except my wife, Emma Mae Wilkinson, who shall not be required to make any contribution. It being my desire and my will that such taxes shall be charged against or deducted from such gift, devise or bequeath upon or by reason of which such taxes are assessed and paid, except in the case of my wife. My executors, however, shall not be charged with the payment of any Missouri Inheritance Tax which cannot be determined finally as of the date of my death.

Pursuant to § 474.160 RSMo. 1978, Irvin's wife, Emma Mae Wilkinson, renounced the will and elected to take her statutory share of the estate rather than the one-third (⅓) Irvin had devised to her. Because there were no lineal descendants, she was entitled to one half of the estate.

■ The principal issue in this case is how a surviving spouse's election to take against the will affects the distribution of the rest of the estate when the testator has not specified what is to happen. Clearly,

when the testator has so provided in his will, the testator's intent is given effect. However, in cases where the testator has not so provided, the parties appear to agree that the issue is not clearly resolved by the Missouri cases. *See e.g., Mercantile Commerce Bank & Trust Co. v. Binowitz*, 238 S.W.2d 893 (Mo.App.1951); *cf. In re Howe's Estate*, 379 S.W.2d 154 (Mo.App.1964). These cases offer little guidance for determining who bears the loss when the testator's intentions are not apparent.

Generally, there are two views on the issue. Both views are subject, of course, to the testator's expressed intent to the contrary. One view is that when a surviving spouse elects to take against the will, the loss caused by the spouse's increased share is distributed among the beneficiaries by using the general rules of abatement. In other words, the loss is first assessed against the residuary estate, next against general legacies, and then against specific legacies, if necessary. The rationale behind this view is that the testator probably would have intended to give his specific legatees a preference over general legatees, and general legatees a preference over residuary legatees. For applications of this view, see *Campbell v. Cason*, 206 Miss. 240, 40 So.2d 258 (Miss. banc 1949); *Crocker v. Crocker*, 230 Mass. 478, 120 N.E. 110 (1918).

The other view is that the surviving spouse takes an undivided interest in all property in the estate, and the loss is distributed pro rata among all the remaining beneficiaries, regardless of the class of their legacies. The basis for this view is that the general plan of the will is preserved, and the intended balance between preliminary and residuary beneficiaries is maintained. This view recognizes that the testator does not necessarily prefer his specific legatees over general and residuary legatees. In fact, the exact opposite may be his intent. The testator may wish to leave some specific but less significant items to specific legatees, and the bulk of the estate to another through the residuary clause. For application of the pro rata view, *see In re Rosenzweig's Will*, 19 N.Y.2d 92, 278 N.Y.S.2d 192, 224 N.E.2d 705 (1966); *In re Povey's Estate*, 271 Mich. 627, 261 N.W. 98 (1935); *In re Taylor's Estate*, 213 Minn. 509, 7 N.W.2d 320 (1942).

Here, the order of the trial court was in line with the second view. The widow received a "common one-half interest of each asset of the estate subject to payment of claims and cost of administration or one-half of each specific bequest and one-half of the residuary ..." Appellant Brune argues that the electing spouse's increased share should be charged against the remaining beneficiaries under the general rules of abatement in § 473.620 RSMo. 1978, which follows the first view above: the loss would fall first on the residuary estate, then on the general legacies, and then, if necessary, on the specific legacies.

The election statute itself does not indicate where the loss to remaining beneficiaries should fall. Section 474.160 RSMo. 1978. There is case law which indicates that an electing spouse takes an undivided interest in all of the real property in the estate. *See, e.g., Borchers v. Borchers*, 352 Mo. 601, 179 S.W.2d 8, 10 (1944); *Wigley v. Beauchamp*, 51 Mo. 544, 547 (1873); *In re Estate of Youngblood*, 447 S.W.2d 824, 827 (Mo.App.1969), *aff'd* 457 S.W.2d 750 (Mo. banc 1970). However, these cases were either decided before the current election statute or their language is not dispositive of the issue before us.

Brune notes that the omitted spouse statute, § 474.235 RSMo. Supp.1983, expressly provides that the abatement rules of § 473.620 apply in an omitted spouse situation. He argues by analogy that the abatement statute should also apply to an election by a surviving spouse. Evaluation of this argument calls for a closer examination of these statutes.

■ We note initially that although the election statute provides that the electing spouse takes "by descent," § 474.160 RSMo. 1978, this does not mean the spouse takes under the general intestacy statute. Rather, the spouse takes strictly under the

election statute. *Jones v. Jones*, 376 S.W.2d 210 (Mo. banc 1964).

Prior to the enactment of the current election statute, an election such as the present one was governed by §§ 469.110 and 469.090(2) RSMo. 1949 (repealed 1955), which provided that the electing widow was entitled to "one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts." The current election statute, § 474.160(1) RSMo. 1978, provides that the electing spouse shall receive "one-half of the estate." The term "estate" is defined in § 472.010, RSMo. Supp.1983, to mean "the real and personal property of the decedent..." Applied literally, the statute indicates that the electing spouse actually takes an interest in each item of property.

Both the current election statute and the applicable section of the definitional statute were enacted in 1955 and are based on the Model Probate Code of 1946. *See* Committee Comments following § 472.010, RSMo. Supp.1957 (explaining source of definitions, including definition of "estate" as it appears in the current statute) and § 474.160, RSMo. Supp.1957 (explaining source of election statute). The abatement statute was also enacted in 1955, and the Committee Comment indicates that it, too, was based on the Model Probate Code. Section 473.620 RSMo. Supp.1957. However, unlike the election and definitional statutes, the abatement statute as enacted differs significantly from the version in the Model Probate Code. The Model Probate Code § 184 provides that "shares of the distributees shall abate, for ... *the share of the surviving spouse who elects to take against the will*, without any preference or priority as between real and personal property, in the following order: (1) Property not disposed of by will; (2) Property devised to the residuary devisee; (3) Property disposed of by the will but not specifically devised and not devised to the residuary devisee; (4) Property specifically devised." Model Probate Code, § 184 (1946) (emphasis added). The clause providing that the abatement statute applies to an election is

conspicuously absent from the Missouri version, which provides: "When it is necessary that there be an abatement of the shares of the distributees, they shall ... abate, without any preference or priority as between real and personal property, in the following order: (1) Property not disposed of by the will; (2) Residuary devises; (3) General legacies; (4) Specific devises ...." § 473.620, RSMo. 1978. The Missouri statute is silent as to whether it applies in an election situation.

The omitted spouse statute, which Brune cites in support of his argument, was new in 1980. Section 474.235 RSMo. Supp.1983. Under this statute, a surviving spouse who married the decedent after the execution of the will and is not named in the will is entitled to a share of the estate equal to an intestate share. The statute expressly provides: "In satisfying a share provided by this section, the devises made by the will abate as provided in Section 473.620 RSMo. [the abatement statute]." Section 474.-235.2 RSMo. Supp.1983. However, the election statute makes no such express provision that the rules of abatement apply in an election situation.

The Missouri omitted spouse statute is based on § 2–301 of the Uniform Probate Code, which supercedes the Model Probate Code. *See* Comment to § 474.235, *Missouri Probate Code-1980*, MoBar CLE (1980). Although the Uniform Probate Code expressly applies the rules of abatement to an omitted spouse situation, it does not do so in an election situation. Uniform Probate Code (U.L.A.) § 2–207(b) (1983) provides: "Remaining property of the augmented estate is so applied that liability for the balance of the elective share of the surviving spouse is equitably apportioned among the recipients of the augmented estate *in proportion to the value of their interests therein.*" (emphasis added). Thus, the Uniform Probate Code differentiates between the two situations.

██ We note that the Missouri omitted child statute also was amended in 1980 to provide that the abatement rules of § 473.-

620 also apply to an omitted child situation. Section 474.240 RSMo. Supp.1983. This statute was originally enacted in 1955 (then entitled "Pretermitted children") and was based on the Model Probate Code, as was the election statute. *See* Committee Comments following § 474.240 RSMo. 1978. In light of the fact that both the omitted spouse statute and the omitted child statute were amended to incorporate the abatement rules, but the election statute was not, it appears unlikely that the legislature intended for the abatement statute to apply to an election. In construing a statute, we must give effect to the expressed intent of the legislature; we must not add provisions under the guise of construction if they are not plainly written or necessarily implied. *Missouri Public Service Co. v. Platte-Clay Elec. Coop.*, 407 S.W.2d 883 (Mo.1966); *Wilson v. McNeal*, 575 S.W.2d 802 (Mo. App.1979). Furthermore, we presume the legislature acts with knowledge of existing law, *Bushell v. Schepp*, 613 S.W.2d 689 (Mo.App.1981), which would include the above-mentioned case law holding that the electing spouse takes an undivided interest in the estate property. If the legislature had intended to change that law, it would have so stated.

■ The language of Missouri case law on elections is inconsistent with the rules of abatement. When the abatement statute was first enacted, the legislature deleted from the Model Probate Code version a clause expressly applying the abatement rules to an election. When the probate code was revised in 1980, the legislature used the Uniform Probate Code as a model when it expressly applied the abatement rules to other situations, but no change was made in the election statute. These facts, together with the similar treatment of the issue in the Uniform Probate Code, lead us to conclude that the legislature did not intend for the abatement statute to apply to an election to take against the will. We affirm the trial court's order on this issue.

The record is skimpy as to appellant Brune's second point. In his brief he complains that "the court erred in charging appellant's specific devise with a pro rata share of decedent's debt without first exhausting the residuary estate to satisfy same, inasmuch as the payments were debts and not advances."

On August 22, 1983, the co-personal representatives, Vossbrink and appellant Brune, petitioned the probate court. The petition first alleged that Irvin inherited property from Albert's estate, that Albert's estate did not have sufficient cash assets to pay all expenses of administration which were liens on the assets of the estate, and that most of these expenses were estate and inheritance taxes. The petition further alleged that Irvin had agreed during his lifetime to pay the expenses of Albert's estate so as to avoid selling the assets in the estate, and that Irvin's personal representatives had already advanced to Albert's estate the sum of $23,527.42. The petition then requested that the court "allow the advancement of $23,527.42 as a deduction of the estate or in the alternative apportion said expenses against the assets of the Estate of Irvin E. Wilkinson."

A hearing was held on the petition. The only witness was Vossbrink, who, as previously noted, was the personal representative of the estate of Albert, and co-personal representative of the estate of Irvin. He testified that Irvin told him he would pay these expenses "out of his own pocket." Irvin died prior to doing so and prior to the closing of Albert's estate. Vossbrink and Brune paid the expenses out of Irvin's estate.

The trial court found that "said transfer was an advance made by the Personal Representatives of the estate of Irvin E. Wilkinson with the consent of the devisees of Irvin E. Wilkinson's estate and was not in the nature of the payment of a claim or expense of the Irvin E. Wilkinson estate." The court ordered the advance to be charged proportionately against the devisees and heirs of Irvin E. Wilkinson, according to the respective shares of assets received from the Albert E. Wilkinson estate.

On the record before this court, we conclude that the trial court did not err in determining that the payment was an advance, and not a debt of the estate of Irvin E. Wilkinson as appellant now claims. As stated in 34 C.J.S. § 491 (1942), "Advances and disbursements made by the representative for the benefit of legatees or distributees of the estate are to be reimbursed from their respective portions of the estate." Under the standard of review set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), the judgment is affirmed.

CRIST and KAROHL, JJ., concur.