COASTAL MART, INC. and Dwight "Bud" Curran, Appellants,

v.

DEPARTMENT OF NATURAL RESOURCES OF THE STATE OF MISSOURI, Respondent.

No. WD 51946.

Missouri Court of Appeals, Western District.

Nov. 26, 1996.

Gregogy N. Pottorff, Stanley N. Wilkins, Turner and Boisseau, Kansas City, for appellants.

Jeremiah W. (Jay) Nixon, Attorney General, William J. Bryan, Assistant Attorney General, Jefferson City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Under Sections 260.500–.530, RSMo 1986, a person having control of the hazardous substance at the time of a hazardous substance emergency can be held responsible for the cost of cleaning up the site of the emergency. Appellants Mr. Curran and Coastal Mart contest the determination of the Missouri Department of Natural Resources (the Department) that they were persons having control of gasoline which in 1991 allegedly leaked onto land surrounding the site of a service station owned by Coastal Mart and leased to Service Oil.

We reverse the finding below that Coastal Mart was a person having control under the statute because it "stored" and then "disposed of" gasoline which allegedly had pooled under its property for four years following a leak of that gasoline in 1987. That finding was based on a preliminary and hypothetical report and not upon competent and substantial evidence. We also find, however, that because it was the owner of the tanks and of the land on which they are located at the time the tanks were refilled by Coastal Mart's lessee in 1991, Coastal Mart can be considered to have stored gasoline at the site in 1991. Hence if, on remand, it is determined that the 1991 leak was caused by a leak of gasoline from the tanks or lines leading thereto in 1991, then it can be held liable as a person having control under the statute unless it is determined on remand that a statutory exception to liability applies.

We further find that no competent and substantial evidence supports the Director's purported determination below that Mr. Curran is a person having control of the hazardous substance and that to the extent the Order below holds to the contrary it is reversed and Mr. Curran is ordered to be dismissed from the proceeding.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves gasoline spills from underground storage tanks (tanks) on a site owned by Coastal Mart in the City of Sugar Creek. By no later than 1986, Coastal Mart installed six tanks and began to operate a gasoline station at the site. In October 1987, a nearby resident detected escaped gasoline and complained to the Department. The subsequent investigation found that a release of over 700 gallons of gasoline occurred and that four of the six tanks were defective.

Coastal Mart spent in excess of $40,000 to clean up the site. As a part of the cleanup, Coastal Mart removed the four leaking tanks and replaced them with a large new tank. It also left in place the two remaining original tanks which had not leaked. A follow-up site inspection performed by Department personnel revealed that some contaminated water continued to seep near the homes of those residents living near the Coastal Mart station, but concluded that the contaminant was not gasoline but rather was "a de minimis concentration of perchloroethylene resulting from normal dry cleaning operations." The resulting Departmental memorandum concluded that the site of the 1987 gasoline leak was "adequately clean" in October, 1989.

In early 1990, Coastal Mart quit operating the site. At that time it took both the new tank and the two remaining original tanks out of service. The tanks remained out of service until January 9, 1991, when Coastal Mart leased the property and equipment to Service Oil. One month later, Service Oil filled the empty tanks with its gasoline. Soon thereafter, a nearby resident once again detected gasoline contamination.

The Department conducted an investigation. On April 12, 1991, it issued an Order finding that Coastal Mart and Mr. Curran were persons having control over a hazardous substance involved in a hazardous substance emergency[1] and requiring them to "clean up the hazardous substance and take any reasonable actions necessary to end a hazardous substance emergency." § 260.510(2).[2] A "person having control over a hazardous substance" is defined by Section 260.500 as any person:

> producing, handling, storing, transporting, refining, or disposing of a hazardous substance when a hazardous substance emergency occurs, including bailees, carriers, and any other person in control of a hazardous substance when a hazardous substance emergency occurs, whether they own the hazardous substance or are operating under a lease, contract, or other agreement with the legal owner thereof

§ 260.500(8).

Coastal Mart and Mr. Curran appealed the Order. An administrative hearing was held on December 16, 1991. The issue at the hearing focused on whether Coastal Mart was a "person having control over a hazardous substance" as defined by the statute.

The arguments in favor of and against finding that Coastal Mart is a "person having control over a hazardous substance" vary depending on whether the gasoline which caused the 1991 emergency resulted from a new spill in 1991, or from continued leaking of gasoline as a result of the 1987 spill.

The hearing officer did not reach the issue whether Coastal Mart or Mr. Curran would be considered persons having control if the hazardous substance emergency was caused by gasoline which leaked from the tanks or from some other source after Service Oil took over operation of the site in 1991. Instead, he accepted the Department's argument that the leak was caused by the flushing out of gasoline which had pooled in the rocks beneath the site at the time of the 1987 gasoline leak. The hearing officer further accepted the Department's argument that such pooling of gasoline under the surface constituted **"storing"** and **"disposing of"** gasoline as those terms are used in Section 260.500(8), and therefore that Coastal Mart was a person having control of the hazardous substance and so was liable for the cleanup.

Coastal Mart filed a petition for judicial review in the circuit court. After much discovery, the circuit court initially dismissed the Petition for failure to prosecute after Coastal Mart failed to file a particular brief on the date originally set by the court. Within 30 days, however, the circuit court set aside its dismissal and reinstated the Petition upon learning that prior to the dismissal the parties had agreed to extend the date for filing the brief. It then affirmed the agency's Order that Coastal Mart was a person having control under the relevant statute and that it was required to clean up the site. This appeal followed.

In a separate but related action, the Department also sought to hold Service Oil liable.

---

1. Section 260.500(6)(b), RSMo 1986 defines a hazardous substance emergency to include "Any release of petroleum ... in excess of fifty gallons." A release is defined by Section 260.500(9), RSMo 1986 as "any threatened or real emission, discharge, spillage, leakage, pumping, pouring, emptying or dumping of a substance into or onto the land, air or waters of the state unless done in compliance with the conditions of a federal or state permit, unless the substance is confined and is expected to stay confined to property owned, leased or otherwise controlled by the person having control over the hazardous substance...."

2. *See also* Section 260.530.1, which states "Any person having control over a hazardous substance shall be strictly liable to the state of Missouri for the reasonable cleanup costs incurred by the state as a result of failure of such person to clean up a hazardous substance involved in a hazardous substance emergency in accordance with the requirements of sections 260.500 to 260.550...."; Section 319.125(3), (4).

## II. STANDARD OF REVIEW

■ This Court reviews the decision of the Department of Natural Resources, not the judgment of the circuit court. We review the agency's determination of issues of law *de novo;* we review its determination of issues of fact only to determine whether they are supported by competent and substantial evidence, whether the agency has abused its discretion, or whether the agency has acted arbitrarily, capriciously, or unreasonably.[3] Substantial evidence is evidence, which, if true, has probative force; it is evidence from which the trier of fact reasonably could find the issues in harmony therewith.[4]

In determining whether there is substantial evidence we defer to the agency's expertise on scientific or technical matters, *Citizens for Rural Preservation, Inc. v. Robinett,* 648 S.W.2d 117, 128 (Mo.App.1982), and we consider the evidence and the reasonable inferences from the evidence in the light most favorable to the agency's decision. *Clark v. Board of Directors,* 915 S.W.2d 766, 773 (Mo. App.1996). Where, however, the decision is based on unsupported inferences or is contrary to undisputed facts, then it is arbitrary and must be reversed. *Pollard v. Missouri Dept. of Social Servs.,* 752 S.W.2d 466, 468 (Mo.App.1988). "An inference is a logical a priori conclusion drawn by reason from proven or admitted facts. It is more than, and cannot be predicated on, mere surmise or conjecture. It is not a possibility that a thing could have happened or an idea founded on the probability that a thing may have occurred." *Allison v. Sverdrup & Parcel & Associates, Inc.,* 738 S.W.2d 440, 456 (Mo. App.1987).

## III. TRIAL COURT PROPERLY SET ASIDE ITS JUDGMENT OF DISMISSAL

Coastal Mart and Mr. Curran timely filed a Petition for Review of the hearing officer's decision within 30 days of delivery of the notice of that decision. § 536.110.1, RSMo 1986. The Department asserts, however, that once the trial court dismissed the Petition for Review for failure to prosecute the court lost jurisdiction of the case and had no authority to reinstate the Petition. The Department thus asks us to dismiss this appeal on the basis that we do not have jurisdiction to address the case on the merits.

In support of its argument, the Department cites *Rackley v. Firemen's Retirement System,* 848 S.W.2d 26 (Mo.App.1993). In *Rackley,* as here, a Petition for Review was dismissed for lack of prosecution. Within a short time after that dismissal, the Petitioner in *Rackley* filed a second Petition for Review. *Rackley* held that the second Petition was untimely filed, since under the applicable statute a Petition for Review must be filed within 30 days of the agency's final decision. *Id.* at 28–29. Having dismissed the only timely Petition filed, the circuit court in *Rackley* lost jurisdiction of the case.

■ *Rackley* is not applicable here. In this case, unlike in *Rackley,* Coastal Mart did not file a second, untimely Petition. To the contrary, it simply requested the circuit court to reinstate its original Petition. It made its request to reinstate, and the trial court granted the request, within 30 days of the court's order dismissing the case for failure to prosecute. Under Rule 75.01, a court retains control over its judgment for 30 days and may for good cause vacate, reopen, correct, amend, or modify its judgment within that time. *Garner v. Director of Revenue,* 893 S.W.2d 394, 395 (Mo.App.1995) (recognizing the authority of the circuit court under Rule 75.01 to set aside its judgment of dismissal for failure to prosecute if it acts within 30 days of its original order). That is all that the trial court did here. It acted within its authority under Rule 75.01 in reinstating the Petition. Accordingly, we reject the Department's claim that we do not have jurisdiction to entertain this appeal.

## IV. MR. CURRAN'S LIABILITY AS AN EMPLOYEE OF COASTAL MART

Mr. Curran is a former regional manager of construction and maintenance for Coastal Mart. The caption of the April 12, 1991,

---

3. *Clark v. Reeves,* 854 S.W.2d 28, 31 (Mo.App. 1993); *Anderson v. Lebedun,* 782 S.W.2d 648, 650 (Mo.App.1989); § 536.140.2, RSMo 1994.

4. *Prince v. Div. of Family Servs.,* 886 S.W.2d 68, 70 (Mo.App.1994).

Administrative Order issued by the Director of the Division of Environmental Quality of the Missouri Department of Natural Resources states "In the Matter of: The State of Missouri vs. Coastal Mart, Inc. Serve: Mr. Bud Curran, Manager, Construction and Maintenance." Only Coastal Mart is thus named as a defendant in the Administrative Order. The Administrative Order nonetheless specifically states in paragraph D that "Mr. Bud Curran is a person having control over a hazardous substance." In fact, it only says that Mr. Curran has such control; it nowhere states that Coastal Mart is a person having control over a hazardous substance, despite the fact that it is Coastal Mart, not Mr. Curran, that is named as a defendant in the caption.

In these circumstances, both Mr. Curran's attorneys and Coastal Mart's attorneys took the prudent precaution of filing an appeal in which they requested a hearing on the finding that they were persons having control of a hazardous substance at the time of the 1991 emergency. Mr. Curran requested the hearing officer, and later the circuit court, to clarify that it was Coastal Mart, not Mr. Curran personally, that the Administrative Order intended to state was liable for any cleanup, and that Mr. Curran was mentioned solely because he was Coastal Mart's regional manager and hence was the person to be served on behalf of Coastal Mart.

Unfortunately, the hearing officer, and later the circuit court, affirmed the hearing officer's order without addressing Mr. Curran's arguments. They made no findings or conclusions of law at all as to Mr. Curran. They simply ignored his appeal and addressed the appeal of Coastal Mart as if the Order had clearly only held Coastal Mart was the person having control over a hazardous substance.

Mr. Curran therefore appeals to this Court. Here, as below, he asks us to either: (1) clarify that the Order only lists him as a person for service of process on Coastal Mart; or (2) if we find that the Order does hold him personally liable as a person having control, then to reverse the Order because no substantial evidence was adduced to support the claim that he was a person having control

under the statute. In the absence of such findings, he argues, the entry of the Order as to him was arbitrary, capricious, and an abuse of discretion.

We agree with Mr. Curran that the Order is ambiguous as to whether it was intended to apply to Mr. Curran personally or just list him as a person to be served with process on behalf of Coastal Mart. It was certainly inartfully worded in either event. We also agree with Mr. Curran that it is evident from the record that substantial evidence was not introduced below that he should be held liable personally as a person having control, and further that he had no notice that he was subject to personal liability in the proceeding below, which ostensibly was brought solely against Coastal Mart and which all parties treat as having found Coastal Mart to be a person having control.

In these circumstances, one would expect that the Department would file a pleading supporting dismissal of Mr. Curran. And indeed, the Department admits that he was simply a manager for Coastal Mart, and it interprets the Order as only listing him as a person to receive service of process on behalf of Coastal Mart. It does not even claim on appeal that competent and substantial evidence supports finding that Mr. Curran was a person having control in his personal capacity, just that he acted as a manager for Coastal Mart. It nonetheless argues that, because he has appealed the Order and suggested that it could be construed more broadly than was intended by the Department itself, we should do so also and hold him personally liable. More specifically, the Department states in its brief:

> Mr. Curran may never have had any liability in this case until his attorneys raised the subject—only Coastal Mart was named in the Administrative Order that he appealed. Mr. Curran was only identified as the person to be served on behalf of Coastal Mart. He may not have been ordered to personally do anything. But his attorneys have taken the position that he was ordered to clean up the site, and DNR will accept that premise.

■ The legal process is not a game, and a party is not to be penalized for properly

using the judicial process to clarify an ambiguous and potentially extremely burdensome order. Neither can the Department expand the scope of the Order on appeal where, as here, the Order was not intended to impose personal liability on Mr. Curran and where any attempt to do so would be unsupported by the record and would have been done without prior notice to Mr. Curran that he might be subject to such an order.

Substantial evidence does not support any finding that Mr. Curran is liable as a person having control of a hazardous substance, nor would due process permit such liability in light of the lack of notice to him that the proceeding was being brought against him below and not just against Coastal Mart. Accordingly, to the extent that the Order purports to make Mr. Curran personally liable for the cleanup we reverse it and remand for entry of an order dismissing him from the lawsuit. In so ordering, we specifically reject the Department's request that we somehow find that Mr. Curran is not a "prevailing party" under Section 536.087, RSMo 1994, despite the fact that he has won reversal on appeal. Clearly he has prevailed on appeal and is thus entitled to seek whatever relief is available to him as a prevailing party under Missouri law.

## V. COASTAL MART'S STATUS AS A PERSON HAVING CONTROL OVER A HAZARDOUS SUBSTANCE

It is agreed that an order issued by the Department to clean up a hazardous substance pursuant to Section 260.510, RSMo 1986 must be directed to a person having control over the hazardous substance involved in the emergency. Coastal Mart argues that the Department exceeded its statutory authority in issuing the Order against Coastal Mart ordering it to remediate the 1991 spill because it was not a "person having control" over a hazardous substance at the time of the 1991 emergency.

The hearing officer based his determination that Coastal Mart was a person having control on two related determinations: (1) first, that the 1991 release included gasoline from the 1987 release which had pooled beneath the surface and was coincidentally re-leased shortly after Service Oil took over the station; and (2) that Coastal Mart can be considered to have "stored" or "disposed of" the gasoline by placing it in the rocks beneath the surface between 1987 and 1991, and thus is a person having control under the statute.

Coastal Mart disagrees with both bases for the hearing officer's determination. It argues that the hearing officer's determination that gasoline did pool under the surface and was then flushed out in 1991 was not based on competent or substantial evidence, and that even if it were, Coastal Mart cannot be considered to have stored or disposed of any gasoline which pooled in the rocks under the site after 1991. Coastal Mart further argues that we cannot consider the Department's alternative argument in this Court that, even if the gasoline was leaked after Coastal Mart leased the site to Service Oil in 1991, and was not caused by pooled 1987 gasoline, Coastal Mart is still a "person having control" because it owns the site and the gasoline tanks on the site.

As discussed in more detail below, we agree with Coastal Mart that the preliminary geologic assessment and other test results relied upon by the hearing officer at the administrative hearing did not provide competent and substantial evidence to support his ruling. We further agree with Coastal Mart that any accidental pooling of gasoline under the site did not constitute storing or disposing of gasoline as those terms are used in the statute. We also agree with the Department, however, that we may consider whether Coastal Mart is a person having control over the hazardous substance at the time of the 1991 leak due to its ownership of the land and the tanks in which the allegedly leaking gasoline was stored. As the owner, we find, it can indeed be considered under Section 260.500(8) to have "stored" any gasoline which may have leaked from those tanks at the time of the 1991 emergency (even though it did not "store" spilled 1987 gasoline in the rocks beneath the site), and hence can be considered a person having control over that gasoline. As no determination has been made whether the 1991 leak in fact came from the tanks on Coastal Mart's property,

however, or whether any statutory defenses apply, we remand.

### A. *The Finding that the 1991 Emergency was Caused by Pooled Gasoline Spilled in 1987 Is Not Supported by Competent and Substantial Evidence.*

We first address the issue whether competent and substantial evidence supports the determination below that the 1991 emergency was caused by a flushing out of pooled 1987 Coastal Mart gasoline.

The hearing officer's determination that the 1991 contamination was caused by a release of pooled 1987 gasoline was based principally on evidence presented by the Department in the form of a preliminary geologic site assessment ("the assessment"). The assessment nowhere states that gasoline had pooled underneath the site after the 1987 leak, however. Rather, it simply notes that in geological formations of the type underlying the area where the site is located "any percolated product *can* pond up in pockets (such as solution cavities or along bedding plains) and continue to periodically discharge as groundwater (or more product) flushes these products out with sufficient hydraulic head" (emphasis added).

The assessment then goes on to note that, in light of these geological formations, "residual saturation *could theoretically* be flushed for some time depending on surface runoff or precipitation and geological/hydraulic conditions and configurations" (emphasis added). It references an attached illustration of how such pooling and flushing could theoretically occur. At the hearing, however, the author described the illustration as really just a "cartoon version" of what he was saying. He emphasizes that it did not constitute a cross-section of the site. In fact, he admitted he had not performed any new borings at the site but had relied on field research and looked at maps and records of prior borings.

Perhaps for these reasons, the preliminary assessment does not go on to state that some gasoline from the 1987 spill in fact did remain in pockets in the rocky layers beneath the surface of the site, nor does it state that such gasoline was in fact flushed out in 1991.

In fact, the report simply says that a flushing out of gasoline could occur "for some time," without specifying how long a time, and in particular does not state whether this flushing out process could take four years. Neither does it address whether this thesis would hold up where, as here, the site had been found to be clean of gasoline contamination for two years prior to the 1991 spill.

In other words, the preliminary assessment was just that—a preliminary assessment of theoretical possibilities. It did not purport to find that the 1991 contamination in fact was caused by flushing out of pooled 1987 gasoline. Moreover, its accuracy and whether it provided a basis to find that 1987 gasoline caused the 1991 contamination was contested by Coastal Mart below. Despite these points, the hearing officer stated in his conclusions of law that Coastal Mart did not contest the geologic site assessment and further that the assessment "established that given the condition of the limestone underlying the site, a likelihood exists that residual product from the 1987 spill is being periodically flushed out by groundwater and discharged at the spring."

■ Quite simply, the record does not support this conclusion, for the assessment does not establish anything at all. It simply notes a theoretical possibility that gasoline could pool underground and could be flushed out for some time, not that it did pool underground until it was suddenly flushed out four years later. Such preliminary speculation about the possibility that the rock formations in the area might permit gasoline to pool was totally inadequate to support the hearing officer's finding that they indeed *did* pool underground in 1987 (or to support the circuit court's summary affirmation of that finding). If an agency's findings are "contrary to the determinative undisputed facts, the decision is arbitrary and unreasonable and must be reversed." *Pollard,* 752 S.W.2d at 468. *Cf. Shackelford v. West Central Elec. Coop., Inc.,* 674 S.W.2d 58, 63 (Mo.App.1984) (liability cannot rest upon guess work, conjecture or speculation beyond inferences reasonably to be drawn from the evidence). While inferences can support a finding, an inference is

more than "a possibility that a thing could have happened or an idea founded on the probability that a thing may have occurred." *Allison,* 738 S.W.2d at 456. Rather, an inference must be "drawn by reason from proven or admitted facts." *Id.* The preliminary assessment did not provide such facts.

The Department tries to bolster the basis for the hearing officer's finding by noting that he also relied on the fact that the Department's tests of the 1991 gasoline spill showed that the gasoline did not contain MTBE, a gasoline additive used by Service Oil in 1991 but not by Coastal Mart in 1987. Therefore, it argued, and the hearing officer agreed, the gasoline must have been old Coastal Mart gasoline, not newly spilled Service Oil gasoline.

The evidence also showed, however, that the hearing officer only considered this evidence adequate when considered in conjunction with his over-reading of the preliminary assessment. Moreover, there was evidence that MTBE dissipates so quickly that it would not be expected to be found in tests of 1991 spilled gasoline at the site. The evidence further showed that samples of gasoline taken from the site in 1991 were found to be nondegraded gasoline, and that any gasoline remaining from the 1987 spill would have degraded by 1991. In addition, it was undisputed that the Department had considered the site to be cleaned up in 1989, and that samples from neighboring properties taken at that time did not show any gasoline contamination.

Finally, and not unimportantly, it was undisputed that the 1991 gasoline spill and resulting emergency occurred within days after Service Oil had filled the tanks with gasoline in February, 1991. Yet, the hearing officer failed to even address this amazing coincidence. In light of the speculative nature of the evidence that 1987 gasoline could have pooled at the site, and in light of the lack of any evidence at all that it could pool there for four years, without any flushing occurring, and then suddenly be flushed out in large amounts in 1991, just after new gasoline was put in the tanks, we conclude that the determination below that the 1991 emergency was caused by a flushing out of pooled 1987 gaso-

line was simply not supported by competent and substantial evidence.

**B.** *Statutory Interpretation of "Person Having Control" as Including a Person "Storing" or "Disposing of" a Hazardous Substance.*

Even if we agreed with the hearing officer that the 1991 emergency were caused by a delayed release of pooled 1987 gasoline, however, we would reverse and remand this case because of error in the determination below that such a pooling of gasoline constitutes "storing" or "disposing of" a hazardous substance as those words are used in Section 260.500(8), which states in relevant part:

> any person producing, handling, storing, transporting, refining, or disposing of a hazardous substance when a hazardous substance emergency occurs, including bailees, carriers, and any other person in control of a hazardous substance when a hazardous substance emergency occurs, whether they own the hazardous substance or are operating under a lease, contract, or other agreement with the legal owner thereof . . .

§ 260.500(8).

In interpreting this statute, we note that the cardinal rule of statutory construction is to determine the intent of the legislature from the language used, to give effect to that intent if possible, and to construe the language according to its plain and ordinary meaning. *Maudlin v. Lang,* 867 S.W.2d 514, 516 (Mo. banc 1993).

The verb "store" as defined by Webster means: "to stock or furnish against a future time" or "to collect as a reserved supply: lay away." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2252 (1993). The verb "dispose of" means: "to deal with conclusively; settle" or "to get rid of; throw away." *Id.* at 407. Both terms clearly refer to an intentional act—either saving an item for future use, or throwing it away.

The hearing officer recognized that accidental pooling of gasoline in the rocks beneath the surface of Coastal Mart's property does not fit within the plain and ordinary

meaning of either of these definitions, but held that because the legislature intended to enact a broadly remedial statute, the words could nonetheless be broadly interpreted to include an accidental release of gasoline into underground cavities and its subsequent discharge onto neighboring land.

While we understand the motivation for the hearing officer's conclusion, we think that it ignores the rule that, in construing a statute, we "must not add provisions under the guise of construction if they are not plainly written or necessarily implied." *Wilkinson v. Brune,* 682 S.W.2d 107, 111 (Mo.App.1984). Neither the Department, nor the hearing officer cited any authority for interpreting the meaning of the words "store" or "dispose of" in a manner which is contradictory to their plain and ordinary meaning, and we find that to do so would change the meaning of the words. Because they are plainly written and appear to be used in their ordinary sense, this would be error. *Id.* For this reason, we reject the hearing officer's conclusion that Coastal Mart stored or disposed of the gasoline by allowing it to accidentally pool beneath the surface over the years after 1987, and that Coastal Mart for this reason was a person having control over the gasoline at the time the 1991 hazardous substance emergency occurred.[5]

### C. *An Owner of Land or Tanks As a "Person Having Control" of Gasoline Which Allegedly Leaks From Those Tanks*

This does not finally answer the question of Coastal Mart's liability, however. Because the hearing officer determined that the 1991 contamination was caused by a flushing out of gasoline pooled under Coastal Mart's property since 1987, he never reached the alternative claim raised by the Department below that, as owner of the property and the gasoline tanks, Coastal Mart is liable for the cleanup even if the contamination was caused in whole or in part by a gasoline leak from the tanks filled by Service Oil in February 1991.

Coastal Mart actually agrees that the contamination resulted—it says entirely—from a 1991 leak of gasoline from the newly-filled Service Oil tanks, or from other sources in the vicinity. It disagrees that it can be held liable for the contamination caused by a 1991 leak merely based on its alleged ownership of the property and the gasoline tanks, however. In support, Coastal Mart argues that the issue of its liability as a result of its ownership may not be reached on appeal, and that even if it were, mere ownership of the property from which the leak occurred does not legally qualify it as a "person having control" under the statute. We address these contentions in turn.

1. *The Issue of Liability Based on Ownership is Properly Before Us.* Coastal Mart argues that because the hearing officer did not find Coastal Mart to be a person having control based on its ownership of the tanks or property on which they were located, the issue of whether an owner is considered a "person having control" may not be considered on appeal. We disagree. We may not make new factual findings on appeal. Because the fact-finding function rests with the administrative agency, our decision must be based on the factual findings made below. *Anderson,* 782 S.W.2d at 650.

The issue whether ownership of gasoline tanks or the land on which they are located brings a company within the definition of a

---

5. Coastal Mart argues that we need not even reach the evidentiary issue, because the Department is estopped to argue that the 1987 spill was not fully clean, since it previously had found that it was cleaned up.

We need not decide if Coastal Mart preserved this issue or whether it could apply to a private party in these circumstances. While estoppel may run against the State, it does so only in exceptional circumstances where there is a manifest injustice. *Prince,* 886 S.W.2d at 73. To invoke equitable estoppel there must be proof of: 1) a statement or act by the government entity inconsistent with the subsequent government act; 2) the citizen relied on the act; and 3) injury to the citizen. *Id.* In addition, the governmental conduct complained of must amount to affirmative misconduct. *Id.* Given the threat to public health and safety following the release of a hazardous substance, estoppel is not applicable in this case. *See State ex rel. Capital City Water Co. v. Missouri Public Serv. Comm'n,* 850 S.W.2d 903, 910 (Mo.App.1993) (estoppel not applicable if it will interfere with proper discharge of governmental duties, curtail exercise of police power or thwart public policy).

"person having control over a hazardous substance" as that phrase is used in Section 260.500(8) is not a question of fact, however. To the contrary, it is a question of law. As such, we can consider this issue on appeal in support of the judgment. *See Missouri Div. of Family Servs. v. Wilson*, 849 S.W.2d 104, 106 (Mo.App.1993).

**2. *The Definition of "Person having Control" under Section 260.500(8) Can Include the Owner of Land or Gasoline Tanks.*** As noted earlier, a person having control is defined as any person:

> producing, handling, storing, transporting, refining, or disposing of a hazardous substance when a hazardous substance emergency occurs, including bailees, carriers, and any other person in control of a hazardous substance when a hazardous emergency occurs, whether they own the hazardous substance or are operating under a lease, contract, or other agreement with the legal owner thereof;

§ 260.500(8).

Coastal Mart argues that an "owner" does not fit within any of the aspects of the definition of a "person having control" set out in Section 260.500(8), and hence it cannot be held liable for the clean-up if the emergency was caused by a new spill of gasoline from the site in 1991. In support, it suggests that, in January, 1991, prior to the emergency, it leased the land to Service Oil. After that point, it was at most simply a passive landowner.[6] It was Service Oil which put the tanks back into use and which was actually operating the site at the time of the February, 1991, hazardous substance emergency. If a new leak of gasoline from the site oc-

curred in 1991, Coastal Mart argues, then it was Service Oil as lessee, not it as landowner, that is considered a person having control under the statute.

In support of its position, Coastal Mart notes that, unlike CERCLA, 42 U.S.C. § 9607(a)(1), the Missouri statute does not specifically state that ownership of the property where a hazardous substance is released qualifies one as a "person having control" over the hazardous substance. From this silence Coastal Mart concludes that the legislature must have intentionally excluded landowners (and, we presume, tankowners).

We do not read the Missouri statute so narrowly, nor do we believe that we must look at the issue of land ownership in a vacuum. As earlier noted, the verb "store" means "to stock or furnish against a future time" or "to collect as a reserved supply: lay away." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2252 (1993). While Service Oil may have owned the gasoline which allegedly leaked in 1991, that gasoline was kept—*stored*—in tanks owned by Coastal Mart. Those tanks were specifically intended by Coastal Mart for the storage of gasoline and were located on land leased by Coastal Mart to a company, Service Oil, which was engaged in the business of selling gasoline.

On these facts, while Service Oil is a person storing and having control of the gasoline, so is Coastal Mart as those terms are used in the statute. It owned the tanks and the land used for gasoline storage, even if it did not actually own the gasoline stored in the tanks itself.[7]

---

6. Coastal Mart maintains in this Court that it was not the owner in 1991 because it simply leased the property from Pester Marketing Company. While the record does show some documents listing Pester as the owner of the land or of the tanks, it appears from the record that Pester and Coastal Mart have an undefined corporate relationship with each other. In any event, other, often later, documents list Coastal Mart or Coastal Mart–Derby Oil as the owner. These include official documents filed with the Department. Moreover, Coastal Mart failed to appeal the Hearing Officer's determination that it was the owner of the site, but instead actually admitted in its appeal of the Hearing Officer's findings against it, and in other documents filed with the

court, that it was in fact the owner of the site. It cannot now raise a new defense that it did not own the tanks or the site. Cf. *Ibarra v. Missouri Poster & Sign Co.*, 838 S.W.2d 35, 40 (Mo.App. 1992) (new claims cannot be raised on appeal).

7. We do not by this ruling mean to hold that an owner of a truck stop where, for instance, a gasoline truck was parked when it developed a leak, would be liable based simply on his ownership. Here it is the ownership of the land and the tanks which were intended for gasoline storage and which in fact did store gasoline which is dispositive.

Coastal Mart argues in reliance on *City of St. Louis v. Brune Management Co.,* 391 S.W.2d 943 (Mo.App.1965), that the terms of its lease with Service Oil relieve it of any potential liability it might otherwise have because the lease states that the tenant (i.e., Service Oil) has exclusive legal possession of the premises and assumes full control and responsibility for the care and condition of the premises.

In addition, it says the lease shows that Service Oil accepted the premises on an "as is" basis, that Service Oil assumed responsibility to maintain and repair the premises and that Service Oil was responsible for compliance with all federal, state and local regulations.

We doubt that a party can so easily free itself of a statutorily imposed duty of the type involved here. Public policy concerns would not permit a landowner to rid itself of the obligation of cleaning up hazardous substances leaking from its property by the simple expedient of leasing or subleasing the land or the tanks in which the substance is stored. Coastal Mart's ownership of the land and the tanks necessarily confers sufficient control over the contents of the tanks to Coastal Mart that it can be considered to be storing the gasoline in the tanks in a broad sense of the word "storing," whatever the terms of its lease with a lessee of the land. *Cf. Yellow Freight Sys. v. ACF Indus.,* 882 S.W.2d 225, 228 (Mo.App.1994) (purpose of statute is to protect the public at large).

Even were these public policy reasons to broadly construe the word "store" not dispositive, we do not agree with Coastal Mart that the lease takes from it any actual control over the land or the tanks. Numerous provisions of the lease demonstrate that Coastal Mart retained significant control over the premises, and hence over the gasoline stored on those premises. Webster defines "control" in verb form to mean: "to exercise restraining or directing influence over." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 496 (1993). As a noun, "control" means: "power or authority to guide or manage." *Id.* The statute thus seems to be setting forth a factually based test for use in determining whether one is a

"person with control." That is, if one in fact has an ability to exercise authority over a hazardous substance at the time of the emergency, then the statute says one is a "person having control."

In this case, under its lease with Coastal Mart, Service Oil could not make any alterations or improvements to the premises without first obtaining consent from Coastal Mart. In addition, Coastal Mart reserved a right of entry at any reasonable time to inspect or exhibit the premises, make any alteration, improvement, or repair to the premises, or "for any other purpose relating to the operation or maintenance of the premises."

Similarly, Coastal Mart reserved the right to ensure Service Oil's compliance with environmental regulations by entry onto the premises to inspect and conduct tests. Coastal Mart also reserved the right to "prescribe, at its sole discretion, reasonable rules and regulations ... governing the use and enjoyment of the premises." Finally, Service Oil agreed to indemnify and hold Coastal Mart harmless for any and all claims arising from Service Oil's failure to comply with all applicable environmental regulations.

While Coastal Mart may not have controlled the day-to-day operations of Service Oil in a manner making it liable under general tort law principles, we find that under the lease Coastal Mart retained sufficient control of the premises and their operation that it can be considered a "person having control" of a hazardous substance which allegedly leaked from its tanks and its land under the broad interpretation given to a remedial statute such as Missouri's Hazardous Substance Emergency law.

### D. *Remand For Determination Whether Cause of Emergency Was Solely the Act of a Third Party.*

The fact that Coastal Mart could be considered a "person having control" of the hazardous substance if the emergency were caused by a 1991 leak of Service Oil gasoline does not end our inquiry either, however. To the contrary, while the question whether the leak occurred from a flushing out of

spilled 1987 gasoline has been resolved in the negative, a determination must still be made as to what did in fact cause the 1991 emergency—a leak from some other property or a leak from the tanks filled with Service Oil gasoline.

Of course, if the emergency were caused by a leak from other property, Coastal Mart would not be liable. Even if the leak were from Coastal Mart's property, the statute specifically provides that a person having control is relieved of liability if it "demonstrates that the hazardous substance emergency occurred as the result of an act of God, an act of war, an act of the state of Missouri or the United States or solely the act of a third party." § 260.530.2.

And, in fact, Coastal Mart presented some evidence below that Service Oil or persons working at its direction may have been responsible for the 1991 leak. This included evidence that a backhoe may have been operated at the site at the time of the leak, that the lines leading to the tanks were worked on around the time of the leak, and that all of the lines and one of the tanks were not inspected prior to the time the tanks were filled with Service Oil gasoline in February, 1991.

Because we find that the determination that the leak was caused by a delayed release of pooled 1987 gasoline was not supported by competent and substantial evidence, and because the hearing officer failed to address potential alternative causes of the leak and failed to address Coastal Mart's defense that the leak was solely the fault of Service Oil, we remand this matter to the Department to receive additional evidence relating to whether the 1991 release came from the leak of Service Oil gasoline on Coastal Mart's property in 1991, and if so, for a determination whether Coastal Mart is nonetheless relieved of liability because that leak was caused solely by the fault of a third party.[8] *See Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 99 (Mo.App.1982) (only an agency may determine facts in a contested case and an appellate court must remand to the agency to determine an essential fact neglected by an agency).

Reversed and remanded for proceedings consistent with this opinion.

All concur.

---

8. Because of our remand of this matter we need not reach Coastal Mart's additional arguments that the circuit court should have remanded this matter to the Department to consider additional evidence not available at the administrative hearing, and that the initial agency decision was made upon inadequate notice. We are confident that adequate notice will be given of the new hearing, at which the additional evidence to which Coastal Mart refers, as well as any other evidence relevant to the issues on which remand is ordered, may be introduced for consideration in determining the cause of the 1991 hazardous substance emergency.